**In re Lisa PARRISH, Debtor.**

No. 00–01013.

United States Bankruptcy Court,
District of Columbia.

March 4, 2002.

R. Manny Montero, Rockville, MD, for debtor.

Cynthia A. Niklas, Washington, DC, Standing Chapter 13 Trustee.

*DECISION RE DEBTOR'S MOTION FOR ORDER REQUIRING TRUST-EE TO RETURN FUNDS HELD IN ESCROW TO THE DEBTOR*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Under the court's consideration is the Motion for Order Requiring Trustee to Return Funds Held in Escrow to the Debtor filed by the debtor, Lisa Parrish. Under § 1326(a)(2) of the Bankruptcy Code (11 U.S.C.), "[i]f a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable." The court concludes that § 1326(a)(2) obligates the chapter 13 trust-ee to disburse funds that she held at the moment of dismissal of the case in accordance with the terms of the confirmed plan. Accordingly, the court will deny the Motion.

## I

### FACTS

■ After Parrish filed her petition under chapter 13 of the Bankruptcy Code in May 2000, the court confirmed Parrish's amended chapter 13 plan in September 2000. In June 2001, Parrish moved to dismiss the case under 11 U.S.C. § 1307(b), and the court entered an order of dismissal.[1] At the time of the dismissal, the trustee held $1,626.15 in payments by Parrish under the confirmed plan. The court upholds the trustee's position that the trustee is obligated to disburse these funds to creditors in accordance with the terms of the confirmed plan.

## II

### ISSUES

The case law suggests that the court must address two questions:

(1) Does any other provision of the Bankruptcy Code explicitly render § 1326(a)(2) ineffective upon dismissal of the case?

(2) If no specific Code provision explicitly dictates that dismissal renders § 1326(a)(2) ineffective, does dismissal

---

**1.** In most cases (because most chapter 13 cases have not been converted from another chapter), the debtor may obtain a dismissal of right under § 1307(b). *In re Barbieri,* 199 F.3d 616 (2d Cir.1999); *In re Harper–Elder,* 184 B.R. 403 (Bankr.D.D.C.1995). Once the court determines that § 1307(b) applies, the court grants the dismissal immediately, without awaiting any response from other parties, because the right of dismissal is absolute, and F.R. Bankr.P. 1017(e) does not treat such a motion to dismiss as a contested matter under F.R. Bankr.P. 9014. Even if a creditor had asked the court to delay dismissal until the trustee had disbursed all the funds she had on hand, it would not have been appropriate to do so. Analogously, a notice of conversion under 11 U.S.C. § 1307(a) and F.R. Bankr.P. 1017(e) effects a conversion immediately, with no delay possible to permit the trustee's disbursement of funds beforehand.

implicitly retroactively terminate the effectiveness of a confirmed plan as to amounts already collected under the plan?

## III

## ABSENCE OF ANY EXPRESS PROVISION UNDOING § 1326(a)(2) ON DISMISSAL

■ Section 1326(a)(2) makes no exception with respect to funds held by a trustee at the moment of dismissal: by its terms, those funds must be disbursed in accordance with the terms of the confirmed plan.[2] In respect to such funds, no provision of the Bankruptcy Code overrides § 1326(a)(2) based on dismissal of the case. The Bankruptcy Code provision that addresses the effect of dismissals is 11 U.S.C. § 349. In particular, § 349(b) provides in relevant part:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> > (1) reinstates—
> >
> > (A) any proceeding or custodianship superseded under section 543 of this title;
> >
> > (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title;
> >
> > (2) **vacates any order,** judgment, or transfer ordered, **under section 522(i)(1), 542, 550, or 553** of this title; and

(3) **revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.**

[Emphasis added.] For the reasons that follow, the court concludes that § 349(b) ought not be construed as terminating, at the moment of dismissal, the command of § 1326(a)(2) that the trustee distribute funds held under the confirmed plan in accordance with the plan. The court approaches the issue by addressing, first, the outcome if the funds held by a trustee under a confirmed plan were "property of the estate" prior to the moment of dismissal.

## A.

## THE OUTCOME IF THE FUNDS WERE STILL ESTATE FUNDS AT THE MOMENT PRECEDING DISMISSAL

Even if the funds held by a chapter 13 trustee under a confirmed plan constitute estate property up to the moment of dismissal, nothing in § 349(b) expressly treats § 1326(a)(2) as a dead letter upon dismissal of a case. Standing by itself, some might argue, the revesting provision of § 349(b) is ambiguous, and can be read as providing that upon dismissal, the debtor becomes the owner of both the legal and equitable title to property of the estate, subject to no restrictions.

■ However, it is inappropriate to read § 349(b) in isolation. "Statutory construction ... is a holistic endeavor" and

---

2.  In full, § 1326(a) provides:

(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(2) A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. **If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable.** If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

[Emphasis added.]

the meaning of one provision is "clarified by the remainder of the statutory scheme ... [when] only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 217–18, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001).

### 1.

When read in conjunction with § 1326(a)(2), § 349(b)(3) is unambiguous. It revests the debtor with the funds subject to whatever restrictions § 1326(a)(2) imposes. Sections 349(b)(3) and 1326(a)(2) can and ought to be read in a way that avoids any conflict and that gives force to both provisions.

Under § 1326(a)(2), it does not matter in whom § 349(b)(3) vests the funds a trustee holds at the moment of dismissal. Section 1326(a)(2) simply requires the trustee to make distributions of those funds according to the confirmed plan, both before and after dismissal, regardless of the entity in whom title is vested.

Although § 349(b)(2) vacates certain orders, it does not list orders confirming chapter 13 plans as among the orders that a dismissal vacates. Accordingly, Congress did not intend § 349(b) to vacate an order confirming a chapter 13 plan such as to render § 1326(a)(2) no longer controlling with respect to the disposition of funds held by the trustee under a confirmed plan at the moment of dismissal. This is additional evidence that § 349(b)(3) ought not

be read as terminating the statutory commands of § 1326(a)(2).

Even when the case is dismissed without a plan having been confirmed, and the trustee holds funds the debtor paid to her under the plan, it is obvious that, despite § 349(b)(3)'s revesting provision, § 1326(a)(2) can prevent the debtor from obtaining those funds. When no plan is confirmed, § 1326(a)(2) requires distribution of the funds to the debtor "after deducting any unpaid claim allowed under section 503(b) of [the Bankruptcy Code]." For example, if the debtor's filing fee remained partially unpaid, the trustee would have an obligation to pay that fee out of the funds despite title having revested in the debtor. It is doubtful that Congress intended § 349(b)(3) to override § 1326(a)(2) such that the debtor will recover plan payments scot free of any filing fee obligation, leaving the court to chase the debtor for payment of the filing fee.

This analysis would ordinarily suffice to conclude the court's inquiry. However, there are two decisions that have held in debtors' favor, and there are decisions that have reached a seemingly inconsistent result in the case of a chapter 13 case converted to chapter 7.

### 2.

Parrish relies upon *Nash v. Kester (In re Nash)*, 765 F.2d 1410 (9th Cir.1985). However, the provisions of current § 1326(a) did not apply in *Nash*. Instead, an earlier version of § 1326 applied that did not contain any directive for the trustee to distribute plan payments in accordance with a confirmed plan.[3] Accord-

---

**3.** By the time that *Nash* was decided by the court of appeals, § 1326 had been amended to add a new § 1326(a) largely the same as the one that now exists. However, the amendment did not apply. The amendment was made by § 318 of the Bankruptcy

Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. Under § 553(a) of the Act, the amendment to § 1326 became effective only in cases filed 90 days after the date of enactment of the Act (which was July 10, 1984). The debtors in *Nash* filed their

ingly, *Nash* is of little relevance to determining whether § 349(b)(3) displaces § 1326(a)(2) with respect to plan payments received by the trustee prior to dismissal of the case.[4]

The court of appeals in *Nash*, on facts virtually identical to the present case, held that after dismissal of the chapter 13 case, the trustee was required to return to the debtors undisbursed funds they had paid to the trustee under their confirmed plan prior to dismissal. In so holding, the Ninth Circuit first relied on 11 U.S.C. § 1327(b) and then on § 349(b). Section 1327(b) provides:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

The Ninth Circuit reasoned that, under 11 U.S.C. § 1306(a)(2), the funds that the trustee Kester had received pursuant to wage deduction orders had been property of the estate, but upon confirmation of the chapter 13 plan, the property of the estate, including the funds paid to the trustee,

was vested in the debtors pursuant to § 1327(b). *Nash*, 765 F.2d at 1414.

Whether or not funds held by a trustee under a confirmed chapter 13 plan are, pursuant to § 1327(b), titled in the debtor or instead are estate property is irrelevant to deciding whether the debtor or creditors are entitled to receive the funds under the confirmed plan: § 1326(a)(2) mandates payment in accordance with the terms of the confirmed plan, and that mandate is not undone by § 1327(b) either before or after dismissal.

A debtor's title to funds under § 1327(b) by itself could not possibly suffice to require a trustee to return the funds to the debtor in the face of a confirmed plan. If it did, then even during the pendency of the case, a trustee would not be empowered to make distributions of funds to creditors pursuant to a confirmed plan, thereby rendering § 1326(a)(2) and the plan itself nullities. Plainly the debtor's title to the funds under § 1327(b) (assuming the Ninth Circuit was correct on the issue of title)[5] would not answer what the

---

bankruptcy case in 1983. The court of appeals therefore was not required either to consider the new § 1326(a)(2) or to address whether this new § 1326(a)(2) embodied a view of the proper interpretation of § 349(b)(3) that was at odds with the court of appeals' interpretation.

**4.** Although the Ninth Circuit did not address the current § 1326(a)(2) (which was inapplicable in *Nash*), the court did address the effect of what was then § 1326(b) (now § 1326(c)) and which provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

The court of appeals correctly concluded that this simply designated the trustee as the disbursing agent in default of any other provision providing otherwise, and did not address whether the trustee was required to disburse funds in accordance with the plan after dis-

missal. *Nash*, 765 F.2d at 1413 n. 1. Here, in contrast, § 1326(a)(2) does apply, and does specifically direct disbursement of the funds received after confirmation of a plan in accordance with the confirmed plan, and makes no exception for a dismissed case.

**5.** It is probably preferable to read § 1327(b)'s revesting rule as being inapplicable to funds paid to the trustee for distribution under a plan (whether confirmed or not), because the plan implicitly provides that the funds the trustee receives are property of the estate to be held for the benefit of creditors. Section 1327(b)'s revesting rule is overridden "as otherwise provided by the plan."

This interpretation would protect the funds, even when a plan has not yet been confirmed, from seizure by postpetition creditors: the automatic stay of 11 U.S.C. § 362(a) bars execution on property of the estate. However, once a plan is confirmed, it matters not whether the funds are estate property: § 1326(a)(2) mandates their payment to credi-

trustee is required to do with the funds once they are entrusted to the trustee's care under a confirmed plan, and this remains so even after dismissal of the case: § 1327(b) does not purport to address the effect of dismissal.

This analysis demonstrates that § 349(b) similarly cannot undo § 1326(a)(2). Specifically, in regard to funds held by the trustee at the moment of dismissal, § 349(b)(3) does not purport to address the effect of dismissal on the confirmation order, the confirmed plan, and the trustee's duties under § 1326(a)(2). Accordingly, a debtor's title, under § 349(b)(3)'s revesting provisions, to funds that were paid pre-dismissal to a trustee under a confirmed plan is irrelevant: unless dismissal vacates the effectiveness of a confirmed plan (and nothing in the Bankruptcy Code says it does), § 1326(a)(2) requires the trustee to disburse those funds in accordance with the confirmed plan without regard to who holds title.

### 3.

In *In re Slaughter*, 141 B.R. 661 (Bankr. N.D.Ill.1992), the only other case cited by the debtor as holding that after a post-confirmation dismissal the trustee must return plan funds to the debtors, the court relied heavily on § 349, noting that the legislative history indicates that § 349 seeks to undo the bankruptcy case as much as possible as if there had never been a bankruptcy filing. If the debtors had never filed a chapter 13 petition, they would be entitled to their wages, and thus,

the court reasoned, they should be entitled to their wages upon dismissal. *Slaughter*, 141 B.R. at 664.

*Slaughter*, however, does not even mention § 1326(a)(2). It is thus just as unpersuasive as *Nash*.

Moreover, the legislative history to § 349 is plainly insufficient to justify the holdings in *Slaughter* and *Nash*. First, legislative history is never effective to override the plain language of a statute, and when read in conjunction with § 1326(a)(2) the meaning to be accorded § 349 is clear. Second, even if resort to legislative history were appropriate, § 1326(a)(2) is an express exception to the general policy that the legislative history indicates that § 349 embodies. Finally, overriding § 1326(a)(2) based on that general policy would lead to absurd and inequitable results that Congress could not have intended: that interpretation would allow the debtor to take the money that was earmarked for creditors and run after tying creditors' hands by reason of the confirmed plan having been in place.

### 4.

■ The court turns now to address the analogous situation of a conversion to chapter 7. The better reasoned decisions, reflecting a majority view, hold that § 1326(a)(2) applies after conversion of a case to chapter 7. *See In re Pegues*, 266 B.R. 328, 332 (Bankr.D.Md.2001), and decisions cited therein.[6]

---

tors as provided for by the plan and this would override any subsequent execution on the funds by a postpetition creditor not provided for by the plan. Section 1326(a)(2) operates irrespective of whether legal title is vested in the estate or in the debtor.

**6.** *Nash* and *Slaughter* reason that cases involving a conversion rather than a dismissal are of limited use as they do not address § 349(b)(3). *Nash*, 765 F.2d at 1414; *In re*

*Slaughter*, 141 B.R. at 662. If § 1326(a)(2) vests the creditors with a superior right to the funds (even if the funds are treated as still estate funds on confirmation or are treated as the debtor's funds by virtue of § 1327(b)'s revesting provisions), it does not matter if a dismissal, as opposed to a conversion, follows. The superior statutory right of the creditors to the funds trumps both the rights that a chapter 7 trustee or a debtor would otherwise enjoy.

Decisions to the contrary, holding that § 1326(a)(2) does not apply upon conversion, rely upon 11 U.S.C. § 348(e). *See, e.g., In re Luna*, 73 B.R. 999, 1002 (N.D.Ill. 1987). While § 348(e) terminates the services of the chapter 13 trustee upon conversion, § 349 does not contain a similar provision terminating the services of the trustee on dismissal.

Nevertheless, the result in both the case of a dismissal and the case of a conversion ought to be the same. The court can discern no reason why Congress would permit a debtor to obtain funds held by a chapter 13 trustee under a confirmed plan at the moment of conversion, but not to obtain such funds held at the moment of a dismissal. The court accordingly believes it appropriate to demonstrate that the same result applies in both cases: the chapter 13 trustee disburses to creditors in accordance with the confirmed plan any undisbursed plan funds held at the moment of either a dismissal or a conversion.

The language of § 348(e) terminating the trustee's services upon conversion cannot be taken too literally: the services § 348(e) has in mind regard services with respect to the estate that will be administered in the new chapter. The provision is aimed at the practicality that there cannot be two trustees administering the same estate under the provisions of the new chapter. Section 348(e) complements other provisions which contemplate that in the new chapter, there may not be a trustee, or at least not the same trustee. In a case converted to chapter 11, the debtor serves as a debtor in possession, without a trustee

being appointed initially, if ever (*see* 11 U.S.C. §§ 1101(1), 1104, and 1107), and § 348(e) makes clear that the debtor in possession commences as such without any trustee in place, even temporarily, from the old chapter. In a case converted to chapter 7, the United States Trustee appoints an interim trustee "that is a member of the panel of private trustees established under section 586(a)(1) of title 28 or that is serving as trustee in the case immediately before the order for relief under this chapter . . . ." If a chapter 11 or chapter 13 trustee's services were not terminated upon conversion of the case to chapter 7, the United States Trustee's power of appointment under § 701(a)(1) would be nullified.

A limited view of § 348(e), interpreted narrowly to restrict it to the practical purposes it serves, is necessary because Congress could not have intended termination of the trustee's services to extinguish her obligation to clean up and finalize her administration of the chapter 13 case.[7] *Accord, Pegues*, 266 B.R. at 336–37 (despite § 348(e), "it is clear that Congress intended that the chapter 13 trustee shall wind up the affairs of the chapter 13 estate, including disbursing monies on hand to the appropriate recipient.").

Indeed, under 18 U.S.C. § 153(a), a trustee is subject to criminal penalties if she embezzles property belonging to "the estate of a debtor." Congress plainly would have intended that a chapter 13 trustee who holds undisbursed funds under a confirmed plan be subject to the

---

**7.** The Federal Rules contemplate that the trustee continues after conversion to chapter 7 as a trustee with respect to winding up the activities in which she engaged before conversion of the case to chapter 7, and that do not interfere with the chapter 7 trustee's service as the new trustee. First, she is required upon conversion to turn over to the chapter 7 trustee the records and property of the estate in her possession or control as "trustee." F.R. Bankr.P. 1019(4). Second, she must "as trustee" file a final report and account. F.R. Bankr.P. 1019(5)(B)(ii). These rules embody a sensible view that the chapter 13 trustee must still perform certain duties ancillary to her preconversion services as trustee.

provisions of 18 U.S.C. § 153(a) even after conversion of the case, that is, that she still be treated as a trustee despite 11 U.S.C. § 348(e).

In the case of funds held under a confirmed chapter 13 plan and necessary to pay claims in accordance with the plan's terms, § 1326(a)(2) makes clear that the funds will not be administered in the new chapter. Such funds were required, even before conversion, to be distributed to creditors by the trustee "as soon as practicable," and that prior statutory command trumps any obligation under F.R. Bankr.P. 1019(4) to turn over the funds as estate property (if they retained that character despite § 1326(a)(2) and would constitute estate property under 11 U.S.C. § 348(f) [8] in the absence of a confirmed plan).

After conversion to chapter 7, which trustee is required to make distribution of funds held under the confirmed chapter 13 plan? It is the chapter 13 trustee. She is the only trustee entitled to compensation for doing so. *See* 28 U.S.C. § 586(e)(1) (relating to compensation of a chapter 13 trustee, but not a chapter 7 trustee, for making distributions under a plan). Moreover, in directing the trustee to make distributions under the confirmed plan, § 1326(a)(2) has obvious reference to the trustee in the chapter 13 case. It is not the chapter 7 trustee who is charged with a duty under § 1326(a)(2): that trustee administers only property whose distribution is governed by the terms of chapter 7, not by the terms of the confirmed chapter 13 plan.

To recapitulate, the chapter 13 trustee's postconversion distribution of such funds to creditors, ancillary to her status of trustee of funds received preconversion under a confirmed chapter 13 plan, does not amount to handling funds that might otherwise be administered as part of the chapter 7 estate, and with respect to which only the chapter 7 trustee would be authorized to serve as trustee. Therefore, § 348(e), in terminating the chapter 13 trustee's services so that she does not continue to serve as a trustee administering the chapter 7 estate, does not relieve the chapter 13 trustee of her duty that existed preconversion to make distribution as commanded by § 1326(a)(2).

Moreover, even under the erroneous view that § 348(e) prevents the chapter 13 trustee from acting as a trustee even when she winds up her administration, she is still "at the very least, a custodian of funds having the duty to deliver them to the party with the best claim to them." *In re Redick*, 81 B.R. 881, 886 (Bankr.E.D.Mich. 1987). Because § 1326(a)(2) implicitly gave the creditors the right to obtain an order preconversion to compel distribution under § 1326(a)(2), they "have a vested right to receive those payments pursuant to the plan." *Redick*, 81 B.R. at 887. The result is that even after § 348(e) terminates her services, the chapter 13 trustee "is holding the undistributed funds as an agent for the creditors." *Id.* "The mere happenstance of the delay inherent in ... the preparing and mailing of checks should not defeat vested statutory rights." *Id.*

■ There is a caveat to this discussion in the case of excess funds unnecessary to complete payments on claims in accordance with the confirmed plan's terms. If such funds were derived from property of the estate that was in existence on the

---

**8.** Section 348(f) of the Bankruptcy Code governs whether, in the absence of a confirmed plan, funds held by a chapter 13 trustee after conversion constitute estate property to be administered by the chapter 7 trustee. Enacted in 1994, Section 348(f) resolved a conflict in the case law regarding whether postpetition-acquired property that was property of the estate in the chapter 13 case by virtue of 11 U.S.C. § 1306 became property of the chapter 7 estate on conversion. *See Pegues*, 266 B.R. at 330–31.

petition date, the chapter 7 trustee would be entitled to those funds despite the implicit or explicit provision of the plan that the funds are to be paid to the debtor. As estate property under § 541 on the petition date that still remains in the debtor's possession or control by virtue of the debtor's rights therein under the plan, such funds would plainly be administrable by the chapter 7 trustee under § 348(f)(1)(A) ("property of the estate ... shall consist of property of the estate as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion"). *See Pegues*, 266 B.R. at 336 n. 16 (court's holding that chapter 13 trustee must disburse funds held by the chapter 13 trustee at the time of conversion in accordance with the confirmed plan "does not apply to undisbursed funds ... which are proceeds of pre-petition assets which would be property of the chapter 7 estate pursuant to Sections 348(f) and 541(a)," citing *Wyss v. Fobber (In re Fobber)*, 256 B.R. 268, 277–78 (Bankr.E.D.Tenn.2000)).[9]

### B.

### OUTCOME IF THE FUNDS WERE HELD IN TRUST FOR CREDITORS THE MOMENT BEFORE DISMISSAL

Under § 1326(a)(2), it does not matter in whom the funds are vested; § 1326(a)(2) simply requires the trustee to make distributions according to the confirmed plan.

Nonetheless, some courts have gone further and found that the funds vest in the creditors once the debtor voluntarily delivers his or her wages to the trustee under a confirmed plan. *In re Verdunn*, 210 B.R. 621, 626 (Bankr.M.D.Fla.1997); *In re Halpenny*, 125 B.R. 814, 816 (Bankr.D.Hawai'i 1991); *Ledford v. Burns (In re Burns)*, 90 B.R. 301, 304–05 (Bankr.S.D.Ohio 1988); *Redick*, 81 B.R. at 887; *In re Lennon*, 65 B.R. 130, 137 (Bankr.N.D.Ga.1986). If by virtue of the reasoning of these decisions the property is no longer property of the estate, then the property is not subject to § 349(b)(3) upon dismissal.

However, the estate could alternatively be viewed as continuing to have legal title to the funds, with the creditors vested with ownership of the equitable interest in the funds as beneficiaries of a trust created by the terms of the confirmed plan. Under that alternative approach, § 349(b)(3) might revest the debtor with legal title, but subject to the superior right of the creditors to the equitable interest in the funds.

The court will not resolve this issue. It is unnecessary to focus on legal title in deciding this case: it suffices to uphold the vested right of the creditors to be paid in accordance with the terms of the confirmed plan, and the court need not decide whether the creditors completely own the funds (that they have both legal and equitable title) in order to achieve protection of that vested right.

---

9. To the extent that the quoted language in *Pegues* was intended to extend to undisbursed funds necessary for paying creditors' claims under the confirmed plan, this would be questionable *dicta*. The *Fobber* case cited in *Pegues* did not involve a confirmed chapter 13 plan. *Fobber*, 256 B.R. at 277 n. 3. As already discussed, the creditors' rights under a confirmed plan trump whatever rights, if any, the debtor had in those funds by reason of the revesting provision of § 1327(b). Congress gave no indication that under § 348(f) the chapter 7 trustee would piggyback onto those inferior rights of the debtor without inheriting their inferior character. Section 348(f), in other words, gives no indication that it was intended to undo the superior right under § 1326(a)(2) of claims entitled to payment under the confirmed plan. As already noted, *Redick*, 81 B.R. at 887, explains that there is no reason for those vested rights to disappear based on the fortuity that the chapter 13 trustee distributes such funds after instead of before the conversion of the case.

## IV

## DISMISSAL DOES NOT IMPLICITLY RETROACTIVELY TERMINATE THE EFFECTIVENESS OF A CONFIRMED PLAN AS TO AMOUNTS ALREADY COLLECTED UNDER THE PLAN

Having concluded that no provision of the Bankruptcy Code explicitly renders § 1326(a)(2) ineffective upon dismissal, the court turns to whether dismissal implicitly terminates the effectiveness of § 1326(a)(2).

Dismissal does have certain implicit results. For example, dismissal implicitly vacates the order of confirmation as to the debtor's obligation to make plan payments after dismissal. A dismissal often is based on the debtor's default in making plan payments. *See* 11 U.S.C. § 1307(c)(6). Moreover, dismissal terminates the restriction of the payment of creditors' claims to whatever payment they would receive under a plan: dismissal terminates the automatic stay (11 U.S.C. § 362(c)(2)(B)) such that creditors are free to resume collection, and, unlike a chapter 11 case, the debtor would not have received a discharge if the case were dismissed for failure to make plan payments, such that the original debt would not have been written down to the amount that the plan provided would be paid.[10] The creditors are relieved of the potential that their claims would be discharged upon completion of plan payments, and the debtor is relieved of the obligation to continue to make such plan payments.

 However, dismissal's implicit termination of the debtor's obligation to make **future** plan payments does not answer whether dismissal renders the plan ineffective as to **past** payments. Unlike future

plan payments, nothing in the structure of the Bankruptcy Code's provisions suggests that dismissal undoes the confirmed plan with respect to past payments.

The court disagrees with the Ninth Circuit's conclusion that a dismissal order effectively vacates an order of confirmation as to funds already paid under a confirmed plan. *Nash*, 765 F.2d at 1413. According to *Nash*, the dismissal would have a retroactive, rather than merely a prospective, effect on the plan. Allowing this retroactive effect could theoretically require the creditors to return all payments received under the plan to the debtor. *Mehan v. Sparkman (In re Mehan)*, 2000 WL 1010577, at *4 (Bankr.E.D.Pa.2000). Moreover, if dismissal vacated the confirmation order as to past plan payments, creditors could rightfully require daily distributions of funds held by the trustee under a confirmed plan, an administrative nightmare that Congress could not have intended. *Redick*, 81 B.R. at 886. The debtor should not have both the benefit of creditors' enforced collection rights having been stayed by reason of a confirmed plan, and the right to receive undisbursed plan funds on dismissal. Congress could not have intended such an inequitable result. The plan payments (and the creditors' right to receive them under the confirmed plan's terms) were the price of the debtor's obtaining a stay of collection by way of the confirmed plan. Dismissal does not free the debtor of that price.

## V

For the foregoing reasons, the debtor's Motion will be denied. The court's order follows.

---

**10.** Dismissal additionally reinstates any state receivership or assignment for the benefit of creditors proceeding. *See* 11 U.S.C. §§ 349(b)(1)(A), 543, and 101(11).