In re Anthony T. TRAN, Debtor.

Amrane Cohen, Chapter 13
Trustee, Appellant,

v.

Anthony T. Tran, Appellee.

BAP No. CC–03–1521–BMAJ.

Bankruptcy No. SA 01–12262–RA.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted March 18, 2004.

Filed April 29, 2004.

■

**332**

Misty Perry Isaacson, Dreyfuss, Ryan & Weifenbach, Santa Ana, CA, for Amrane Cohen, Chapter 13 Trustee.

Before: BRANDT, MARLAR, and JAROSLOVSKY,[1] Bankruptcy Judges.

### OPINION

BRANDT, Bankruptcy Judge.

In this case the chapter 13[2] debtor represented in his post-confirmation motion to refinance his house that the net proceeds would be used to pay 100% to unsecured creditors. The court granted the motion, and after the proceeds had been remitted to the trustee but before he could distribute the proceeds, debtor dismissed his case. Who gets the money?

The bankruptcy court held that the funds revested in debtor upon dismissal, and ordered the Trustee to turn over the proceeds to him, in accordance with *In re Nash*, 765 F.2d 1410 (9th Cir.1985). We conclude that the holding of *Nash* was not disturbed by an amendment to the operative Code section, and AFFIRM.

### I.  FACTS

Debtor Anthony Tran filed his chapter 13 petition and plan, which called for 42 monthly payments and provided for a 16% dividend to unsecured creditors.

Approximately two years after his plan was confirmed, Tran moved for permission to refinance his home mortgage. The Trustee received the motion, filed under LBR 3015–1(p), and recommended approval, provided the proceeds be used to:

> pay only the liens ... and usual and customary escrow fees and charges. Pursuant to Motion, the percentage to unsecured creditors increases to 100%. The Chapter 13 trustee will make demand for all net proceeds to be disbursed to Debtor(s)' creditors pursuant to Debtor(s)' confirmed plan. Upon the Trustee's final audit of Debtor's case, all remaining funds, if any, will be refunded to the Debtor(s). The Chapter 13 trustee reserves the right to demand addi-

---

1.  Hon. Alan Jaroslovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

2.  Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. References to "LBR" are to the Local Bankruptcy Rules for the Central District of California.

tional funds as necessary upon review of the Claims Register on file with the Clerk of the Bankruptcy Court.

The bankruptcy court granted the motion "as modified by the Trustee's comments" ("Refinance Order"). The refinance closed, and the Trustee received proceeds of $26,057.83, but before he made any distributions, debtor dismissed his case under § 1307(b).[3]

The Trustee then noticed his motion to distribute the funds on hand pro rata to debtor's unsecured creditors, after payment of the Trustee's administrative fee and secured claims, as contemplated in the Refinance Order. Debtor objected. After a hearing, the court sustained debtor's objection and ordered the Trustee to remit the funds to debtor once the order became final. The Trustee timely appealed.

The Trustee requested a stay pending appeal, which the bankruptcy court denied. We granted a temporary stay which expired. At oral argument the Trustee advised that the proceeds were disbursed to debtor; nevertheless, this appeal is not moot because although he has neither briefed or argued, debtor is a party to the appeal. See In re Spirtos, 992 F.2d 1004, 1006–07 (9th Cir.1993).

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(A) and (O), and we do under 28 U.S.C. § 158(c).

3. That sub-section provides in pertinent part:
   On request of the debtor at any time, if the case has not been converted ..., the court shall dismiss a case under this chapter.

4. Section 349(b) provides, in relevant part:
   Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

## III. ISSUES

A. Did the bankruptcy court err in ruling that debtor was entitled to receive the proceeds of the refinance under § 349(b)(3)?

B. Did the bankruptcy court abuse its discretion in not "ordering otherwise" with respect to the revesting of the proceeds of the refinance?

## IV. STANDARD OF REVIEW

■ We review issues of statutory construction and conclusions of law, including interpretation of the Bankruptcy Code, de novo. In re Staffer, 262 B.R. 80, 82 (9th Cir. BAP 2001), aff'd, 306 F.3d 967 (9th Cir.2002).

■ We review discretionary rulings pursuant to the Code for abuse of discretion. In re Gonic Realty Trust, 909 F.2d 624, 626 (1st Cir.1990). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

## V. DISCUSSION

■ Section 349 governs the effect of the dismissal of a bankruptcy case. Subsection (b) of that section provides that dismissal reinstates certain proceedings, voided liens, avoided transfers, and vacates various orders. Dismissal also revests estate property in the entity in which it was vested immediately prior to filing.[4] The

...

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title (emphasis added).

bankruptcy court has discretion to "order otherwise" for cause.

Section 349(b)'s basic purpose is to "undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *Nash,* 765 F.2d at 1414 (*citing* S.Rep. No. 95–989, at 49, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835). The debtors in *Nash* dismissed their confirmed chapter 13 case, as § 1307(b) allows. At the time, the chapter 13 trustee held roughly $900, which he paid to an unsecured creditor in accordance with the confirmed plan. The bankruptcy court overruled debtors' challenge to the distribution, but the Ninth Circuit reversed, holding that the trustee should have distributed the funds to the debtors.

The *Nash* court reasoned that (1) dismissal of the chapter 13 effectively vacated the confirmed plan; (2) the funds held by the trustee at the time of dismissal were property of the estate; and (3) dismissal revested property of the estate in debtors. The court also noted that under § 1327(b) [5], confirmation vests ownership of property of the estate in the debtors (perhaps redundantly, given the revesting provision of § 349). *Nash,* 765 F.2d at 1414. In our case, the form chapter 13 plan used by the debtor provided that estate property would not revest in the debtor until discharge or dismissal.

Following *Nash,* the bankruptcy court concluded that the funds held by the Trustee revested in the debtor upon dismissal and should be turned over to him. The court also found that the Trustee had not shown cause for ordering otherwise.

## A. Does the Code Mandate Refund to Debtor?

### 1. Section 349(b)(3)

The Trustee argues that dismissal did not vacate either the Refinance Order or the confirmation order, as neither type of order is included in the list of orders vacated by a dismissal under § 349(b), and the bankruptcy court did not "order otherwise." But "the omission of an order from the list in § 349(b) ordinarily means that dismissal does not affect the omitted order." *In re Pavelich,* 229 B.R. 777, 780 (9th Cir. BAP 1999) (citations omitted). At the same time, dismissal implicitly revokes, or at least modifies, some orders not enumerated in § 349(b). As *Nash* teaches, dismissal effectively vacates a chapter 13 plan confirmation order. 765 F.2d at 1413.

The Trustee argues that *In re Witte,* 279 B.R. 585 (Bankr.E.D.Cal.2002), supports his contention that the Refinance Order should be given effect despite dismissal. In *Witte,* debtor dismissed his unconfirmed chapter 13 case shortly after a court-approved sale of his real property which provided that liens on the real property would attach to the proceeds, and were to be held by the chapter 13 trustee until lien priorities were determined. After dismissal, the debtor and the IRS, which had levied on the funds, claimed rights in the funds held by the trustee.

The *Witte* court ordered the funds to be distributed in accordance with the sale order, for three reasons: first, the lienholders as well as the debtor had held interests in the real property prior to filing. Second, § 349(b) gave the court discretion to determine how property of the estate should be distributed upon dismissal, and

---

**5.** Which provides:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

the court had expressly retained jurisdiction over the funds in the sale order. Finally, the sale order provided lienholders with adequate protection in the form of a replacement lien, which was not affected by dismissal. Accordingly, distribution should be made in the order that priorities attached to the proceeds, and a distribution made to the debtor only if there were a surplus. The court concluded, "[t]he dismissal of the case did not abrogate the sale order or the rights of the lien holders in the account." *Witte*, 279 B.R. at 588.

*Witte* neither deviates from the Ninth Circuit's holding in *Nash*, nor does it help the Trustee. Here, the secured claims have been paid, there was no reservation of jurisdiction, and the debtor is the only party with a pre-petition interest in the proceeds, while the Trustee proposes to distribute the proceeds only to unsecured creditors.

### 2. *Section 1326(a)(2)*

The Trustee next argues that § 1326(a)(2) requires him to distribute the refinancing proceeds in accordance with the plan, despite dismissal. That section provides, in relevant part, "[if] a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable...." The Trustee points out, first, that the section contains no exception for funds held at dismissal, and second, argues that *Nash* is no longer good law, as it was decided under the pre–1984 version of § 1326, which did not contain this language.[6]

The Trustee cites *In re Parrish*, 275 B.R. 424 (Bankr.D.D.C.2002), which held that upon dismissal of a chapter 13 case, § 349(b)(3)'s revesting language does not

relieve the chapter 13 trustee of his statutory duty to distribute funds in accordance with a confirmed plan under § 1326(a)(2). *Id.* at 426. The *Parrish* court went on to hold:

> [A] debtor's title, under § 349(b)(3)'s revesting provisions, to funds that were paid pre-dismissal to a trustee under a confirmed plan is irrelevant: *unless dismissal vacates the effectiveness of a confirmed plan* (and nothing in the Bankruptcy Code says it does), § 1326(a)(2) requires the trustee to disburse the funds in accordance with the confirmed plan without regard to who holds title.

*Id.* at 429 (emphasis added). According to that court, interpreting these statutes otherwise would lead to an absurd and inequitable result that a debtor could "take the money that was earmarked for creditors and run after tying creditors' hands by reason of the confirmed plan having been in place." *Id.*

The *Parrish* court discounted *Nash*, as it had been decided under the prior version of § 1326. It also rejected the Ninth Circuit's conclusion that a dismissal order effectively vacates the confirmation order as to payments already made to the trustee, because extending that reasoning could theoretically require creditors to return to debtor all payments received under the plan. *Parrish*, 275 B.R. at 433. We, of course, are not free to reject *Nash* if it still applies, and no one is attempting to recover payments from creditors.

We think *Nash* still applies. In our view, § 1326(a)(2) was not intended to address the disposition of funds received by a chapter 13 trustee after confirmation:

---

6. The *Nash* court construed former § 1326(b) (now § 1326(c)), which provides: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." The court concluded that this provision simply designated the trustee as the disbursing agent. 765 F.2d at 1413 n. 1.

A payment made under this subsection shall be retained by the trustee *until confirmation or denial of confirmation* of a plan. If a plan is confirmed, the trustee shall distribute any *such* payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any *such* payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

§ 1326(a)(2) (emphasis added). The preceding paragraph of subsection (a) requires the debtor to begin making plan payments within 30 days of filing a plan—that is, pre-confirmation.

"By its terms, § 1326(a)(2) does not pertain to funds received by a trustee *after* confirmation of a Chapter 13 plan." *In re Boggs,* 137 B.R. 408, 410 (Bankr. W.D.Wash.1992) (emphasis in original). *See also* 8 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1326.02[2] (15th ed. Rev.2004) ("Subsection 1326(a)(2) sets forth the trustee's duties, both before and after the confirmation decision, regarding payments made *before* the confirmation decision.") (emphasis added). The section does not purport to address distribution of funds received post-confirmation or the impact of dismissal on the trustee's duty to distribute funds.

Finally, the Trustee cites *In re Redick,* 81 B.R. 881 (Bankr.E.D.Mich.1987), which decided that chapter 13 plan payments being held at the time of conversion to chapter 7 do not become property of the chapter 7 estate and should be distributed to creditors in accordance with the confirmed plan. The court reasoned that once a debtor makes a plan payment to the trustee, creditors have a vested right to receive those funds, and the trustee holds those plan payments as an agent for the

creditors even if the case is converted or dismissed. According to the court, this obviates the need for creditors to insist on daily distributions to avoid an unfair windfall to the debtor upon dismissal or conversion.

But even if there is an unfair windfall to debtor (about which more later), there is no statutory support, nor any in the legislative history, for the trust theory espoused in *Redick:*

> rather, Congress was apparently dealing with the questions of when plan payments are to begin, the disposition of funds in the event no plan is confirmed, and who is to handle the funds.
>
> . . .
>
> [T]he cases appear to hold that creditors' rights to payments are vested upon the Chapter 13 Trustee's disbursement to them.

*Boggs,* 137 B.R. at 410–411 (citations and footnotes omitted).[7]

The Trustee also contends that even if *Nash* still governs, the proceeds of the refinance were not plan payments, as a refinance was not contemplated in the plan or confirmation order. But, as the bankruptcy court observed in ruling, the Refinance Order was in essence a plan modification. The Trustee offers no authority for treating it otherwise, not citing *Massachusetts Housing Finance Agency v. Evora,* 255 B.R. 336 (D.Mass.2000), which held the refinancing motion there considered was not a plan modification. The debtors there proposed to use some of the refinancing proceeds to pay the remaining balance of their plan early, and did so, retaining for themselves the excess proceeds (the fight was over whether the lender's secured claim should be increased

---

**7.** Interestingly, *Boggs* is not cited by the Trustee in his brief, although it is from within this circuit, critiques *Redick,* and applies *Nash* in a post- § 1326(a) amendment context.

because of post-petition appreciation in collateral value). *Evora's* facts are not ours; here the amount to be paid to creditors, a fundamental aspect of the plan, would change.

Whether or not the Refinance Order was a plan modification, we reject the conclusion that § 1326(a) mandates distribution of Tran's refinance proceeds to creditors: nothing in *Parrish* or *Redick* justifies our disregarding the Ninth Circuit's holding in *Nash.*

Two other points: first, the plan itself provides that estate property revests in debtor on dismissal. The trustee has not even argued that that provision was somehow excised by the Refinance Order—it is not referenced, even indirectly—and the only aspects of the plan necessarily affected by the Refinance Order are the source of the plan's funding and the percentage to be paid to unsecured creditors.

Finally, were we to adopt the Trustee's construction of § 1326(a)(2), we would necessarily read "such" out of the language chosen by Congress, for it refers directly back to the preceding clause regarding payments received by the Trustee before confirmation (or denial of confirmation). Such is not our prerogative: we must "give effect, if possible, to every clause and word of a statute." *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**B. *Did Trustee Show Cause for Ordering Otherwise?***

■ The Trustee argues that he showed substantial cause to "order otherwise," because, in approving the motion, he and creditors relied on debtor's representation that he intended to pay off his unsecured creditors with the proceeds of the refinance. He asserts that debtor's dismissal only three days after the Trustee received the refinance proceeds is inequitable, and

evidences that debtor never intended to pay his creditors.

■ For equitable estoppel, the Trustee must prove four elements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury.

*In re Kelley,* 199 B.R. 698, 705 (9th Cir. BAP 1996); *see also Lehman v. United States,* 154 F.3d 1010, 1016–17 (9th Cir. 1998). But the Trustee has proffered no evidence that he or anyone else relied on debtor's representation, or thereby suffered injury.

■■ Although not explicitly invoking the doctrine, the Trustee also argues that debtor should be judicially estopped from receiving the refinance proceeds. Judicial estoppel is an equitable doctrine which the court may invoke at its discretion, *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir. 1993), and precludes a party from taking inconsistent positions in the same litigation, where the court has relied on the party's previously inconsistent statement. *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London,* 139 F.3d 1234, 1239 (9th Cir.1998). In deciding if the doctrine applies, the court may consider whether doing so will prevent the party asserting the inconsistent position from gaining an unfair advantage. *New Hampshire v. Maine,* 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). *See also In re Cheng,* 308 B.R. 448, 451–54 (9th Cir. BAP 2004) (elaborating on judicial estoppel); *Hamilton v. State Farm Fire & Cas.,* 270 F.3d 778, 782 (9th Cir.2001) (judicial estoppel is invoked to "protect against a

litigant playing fast and loose with the courts.").

Application of judicial estoppel is not warranted here. Debtor became entitled to the refinance proceeds by invoking his absolute right to dismiss under § 1307(b), and the result is not inequitable. The real property was debtor's homestead, and the net proceeds turned over to the Trustee were within debtor's homestead exemption.

The Trustee challenges debtor's right to an exemption, citing Cal.Civ.Proc.Code § 704.720, which exempts the proceeds of a sale of homestead property but does not address the proceeds of a refinance. But Tran never committed the equity in his house to the plan, nor could he have been required to: § 1322(a) requires only the commitment of future earnings or income to the plan which excludes the refinance proceeds. See In re Burgie, 239 B.R. 406, 410–12 (9th Cir. BAP 1999). Moreover, the Trustee misconstrues the role of exemptions in chapter 13, in which they are significant primarily in determining whether the plan meets the best interests test of § 1325(a)(4). In re Winchester, 46 B.R. 492, 495 (9th Cir. BAP 1984). See also 1 & 2 Keith M. Lundin, Chapter 13 Bankruptcy, 3rd Ed. §§ 49.1 and 161.1 (2000 & Supp.2002). The Trustee's argument would make sense only if the case had been converted rather than dismissed. And, of course, were this a chapter 7, debtor would be entitled to the exemption. § 522.

Debtor obtained no unfair advantage, and there is no evidentiary (or logical) basis for the Trustee's theory that creditors somehow relied on debtor's refinancing motion or were prejudiced by it.[8] The record discloses only that none responded. Dismissal restored creditors' ability to pursue collection, albeit after significant time had passed. That delay was not caused by the refinancing motion: rather, it resulted from debtor's petition and then the confirmation of his plan. Notwithstanding any reliance on those, Congress (in § 1307) and the Ninth Circuit (in Nash) permit dismissal.

## VI. CONCLUSION

Given the continued authority of Nash, and the Trustee's failure to show reliance on or damages from debtor's representation in the refinance motion, the bankruptcy court did not abuse its discretion in declining to "order otherwise."

Nor did the bankruptcy court erred in concluding that the debtor was entitled to the proceeds of the refinance upon dismissal. We AFFIRM.

JAROSLOVSKY, Bankruptcy Judge, concurring.

I agree completely with my brethren that In re Nash is still good law and is controlling in this case. I write separately only to express my concern over the Trustee's argument that Tran's conduct amounted to a fraud on the court. The record reflects that Tran's rights under the Bankruptcy Code were considerably curtailed by procedures set forth in the court's local rules, and that what the Trustee calls "fraud" was nothing more than working within those procedures to exer-

---

**8.** Nothing in the record suggests the Trustee (or anyone else) incurred significant expense in considering and commenting on the refinance motion. Were that the case, it would certainly have been appropriate to request the court to "order otherwise" to the extent necessary to make the Trustee (and perhaps other parties) whole. See, for an analogy, In re Arnold, 252 B.R. 778, 788–789 (9th Cir. BAP 2000) (conditioning allowance of amended exemption on payment of trustee's fees and costs in pursuing exempted cause of action).

cise rights that were Tran's under the Code to begin with.

As the Trustee pointed out during argument, the form of plan used by Tran was mandatory pursuant to local rules. Indeed, each page of the plan states: "This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California." Setting aside questions as to the legitimacy of any court-mandated form,[9] the form in this case crossed over the line from facilitating Chapter 13 administration to dictating Chapter 13 terms.

Part VIII of the mandatory plan provides:

### REVESTMENT OF PROPERTY

*Property of the estate shall not revest in the debtor until such time as a discharge is granted or the case is dismissed.* Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the plan, the chapter 13 trustee shall have no further authority or fiduciary duty regarding the use, sale, or refinance of property of the estate, except to respond to any motion for proposed use, sale, or refinance as required by the Chapter 13 General Order of this court. *Prior to any discharge or dismissal, the debtor must seek approval of the court to purchase, sell, or refinance real property.* (Emphasis added)

The mandatory plan does not give a debtor any other choice regarding revesting, even though § 1322(b) of the Bankruptcy Code provides that a plan may "provide for the vesting of property of the estate, on confirmation or at a later time, in the debtor or in any other entity...."

The Trustee argues that Tran could have sought variance from the terms of the mandatory plan and did not do so. However, given the practical realities of plan confirmation Tran had little choice except to adopt the dictated language of the mandatory plan even though under the Bankruptcy Code he had a right to provide that his home revested in him on confirmation. Had he been completely free to exercise his rights under the Bankruptcy Code from the beginning, he would not have needed the consent of the Trustee or the court to refinance his home, nor would the Trustee have any rights to the proceeds.

I believe that the bankruptcy court in this case understood that Tran had little practical ability to deviate from the language of the mandatory plan and therefore did not commit fraud when he dismissed his case after obtaining the refinancing order. Tran was merely working as best he could within a restrictive system to obtain those rights which were granted to him by Congress in the Bankruptcy Code. I therefore fully concur in affirming the decision of the bankruptcy court that Tran is entitled to the proceeds of his refinance.

---

**9.** Section 1325(a) of the Bankruptcy Code provides that the court *shall* confirm a Chapter 13 plan if six conditions are met. Being on a court-approved form is not one of the conditions.