**In re Thomas M. WITTE, Debtor.**

No. 01–29743–A–13J.

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

March 27, 2002.

Thomas Moulton Witte, Fair Oaks, CA, pro se.

Frederick H. Schill, Chico, CA, for debtor.

Stephen E. Ensberg, Covina, CA, James F. Lewin, El Cajon, CA, Michael R. Philippi, San Francisco, CA, Kriston A. Schuler–Hintz, El Cajon, CA, for creditor.

## MEMORANDUM

MICHAEL S. MCMANUS, Chief Judge.

This chapter 13 case was dismissed on January 29, 2002 at the request of the debtor. Because the case had not previously been converted from another chapter, the court was required to dismiss the case without conducting a hearing. 11 U.S.C. § 1307(b).

Prior to dismissing the case, the court authorized the debtor to sell a residential real property located at 127 Mesquite Court, Folsom, California. The debtor and his spouse owned a one-half interest in that property. The owners of the other one-half interest, the debtor's parents, consented to the sale.

An order permitting the sale was entered on October 22, 2001. Pursuant to the terms of the sale order, approximately $22,000.00 was deposited into a blocked, interest bearing account controlled by the chapter 13 trustee. These funds represented a portion of the sale proceeds and were to be held by the chapter 13 trustee until the bankruptcy court determined whether the debtor and/or various lien holders were entitled to the funds. The sale order was very comprehensive and addressed the following issues.

• The sale order identified those lien holders whose claims were not paid from escrow. It specified the recording dates

for each of these liens. *See* Paragraph 10. The sale was "free and clear" of all liens pursuant to 11 U.S.C. § 363(f). *See* Paragraphs 6 and 8.

● It identified those lien holders who were to be paid from escrow. *See* Paragraph 11.

● The sale order required the debtor to deposit the remaining sale proceeds into an interest bearing bank account. The account was placed under the control of the chapter 13 trustee, Jan Johnson, and subject to invasion only upon further court order. Until the bankruptcy court determined which of the unsatisfied lien holders were entitled to the funds in the account, the proceeds were to remain "blocked" in the account. *See* Paragraph 11(f).

● At Paragraph 7, the sale order provided: *"Those entities asserting an interest in any or all of the Property will be adequately protected within the meaning of Section 363(e) of the Bankruptcy Code by their interests attaching to the proceeds of sale as set forth in this Order."*

● At Paragraph 11(f), the order provided: *"All other [unpaid] liens, claims, encumbrances, including specifically but not without limitation, those set forth in Paragraph 10 hereinabove, shall attach to the proceeds and shall be of the same validity, force, status, extent and/or effect as the liens, claims and encumbrances of such parties in the property prior to closing."*

● At Paragraph 18, this court reserved jurisdiction *"over the proceeds of sale, and further retains jurisdiction to determine any disputes or controversies arising in connection therewith or relating thereto, including, without limitation, the determination of the amount[,] validity, enforceability and priority of claims with respect to the proceeds."*

The debtor and the Internal Revenue Service both demand the funds in the account. Because the trustee has received their conflicting demands, and because the court has dismissed the chapter 13 petition, the trustee is asking the court for instructions on the disposition of the funds.

■ The debtor reasons that he is entitled to the funds in the account by virtue of 11 U.S.C. § 1326(a)(2), which provides: *"If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) . . . . "* The term *"such payment"* is a reference to section 1326(a)(1) which requires the debtor to begin *"making the payments proposed by a plan within 30 days after the plan is filed."*

However, the money held by the trustee is not a payment proposed by a plan. The original plan required the debtor to make 36 payments of no less than $1,500.00 a month from his disposable income. *See* Chapter 13 plan filed September 4, 2001. The amended plan required the debtor to pay $100.00 a month until June 2002, then to pay $1,550.00 from July 2002 for the remainder of the 36–month term. *See* Amended Chapter 13 plan filed January 15, 2002. Neither plan called for the sale of property or the payment of the sale proceeds to creditors. The proceeds from the sale of the property, then, were not plan payments within the meaning of section 1326(a)(2).

■ The debtor also argues that turnover is required by 11 U.S.C. § 349(b)(3) which provides that dismissal of a petition *"revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . . "* Section 349(b)(3), however, does not require the return of the funds in the account to the debtor.

First, prior to the commencement of the case, the lien holders as well as the debtor held an interest in the real property. Their respective interests, by virtue of the sale order, attached to the proceeds in the account. If the funds in the account must be returned to the *"entity in which such property was vested immediately before the commencement of the case,"* the funds must be turned over to the lien holders in the order of their respective priorities, not to the debtor (at least in the absence of a surplus). The interest of the debtor and his spouse is limited to any surplus remaining after payment of the liens.

Second, the preamble of section 349(b)(3) specifies that the funds are to be turned over *"[u]nless the court, for cause, orders otherwise."* The court has ordered otherwise. The sale order required the trustee to hold the net sale proceeds pending a further order determining whether and which lien holders were entitled to the proceeds. The dismissal order did not make this determination.[1]

Third, the sale order directed the trustee to hold the proceeds in a separate account pending further court order. Until such an order is issued, the lien holders have a replacement lien on the account. This was the adequate protection required by section 11 U.S.C. § 363(e). That protection did end simply because the case was dismissed. A contrary holding would

mean, given the unqualified right bestowed on a chapter 13 debtor by section 1307(b) to dismiss a petition on demand, that any such adequate protection would be so illusory that the moniker "adequate" protection would be a misnomer.[2]

The dismissal of the case did not abrogate the sale order or the rights of the lien holders in the account.

■ To the extent the debtor makes any argument that the dismissal of the case terminated the bankruptcy court's jurisdiction to adjudicate the rights of the lien holders and the debtor in the sale proceeds, the court notes that its jurisdiction was specifically reserved in Paragraph 18 of the sale order.

■ Even if the court's jurisdiction had not been reserved in the sale order, it is well settled that the bankruptcy court has post-dismissal jurisdiction to interpret and enforce its orders. The dismissal of the bankruptcy case moots only issues involving a debtor's reorganization or liquidation. A dismissal does not moot issues which are ancillary or collateral to the bankruptcy case. *In re Universal Farming Indus.*, 873 F.2d 1334, 1335 (9th Cir. 1989). Ancillary matters include interpretation of prior orders,[3] actions in aid of the execution or implementation of judgments,[4] actions to determine the rights to

---

1. While the sale order predates the dismissal order, nothing in section 349(b)(3) requires that the court "order otherwise" contemporaneously with dismissal.

2. At the oral argument on the trustee's motion for instructions, the debtor suggested he might file a chapter 7 petition if he were to be paid the funds in the account. Presumably, he would claim the funds as exempt. As he has done in this case, the debtor may claim exemptions pursuant to Cal.Civ.Proc.Code § 703.140(b). Sections 703.140(b)(1) & (5), as of January 1, 2002, together permit a debtor to exempt equity up to $18,350.00 in any

asset(s). The debtor previously exempted $7,750.00 pursuant to section 703.140(b)(1) & (5). Assuming the previously exempted assets are still owned by the debtor and have the same value, he could exempt in a new chapter 7 case at least $10,600.00 of the funds if turned over to him.

3. See *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 326 (9th Cir.1986).

4. See *Lawson v. Tilem (In re Lawson)*, 156 B.R. 43, 46 (9th Cir. BAP 1993), *affirmed*, 999 F.2d 543 (9th Cir.1993); *Jones v. Nat'l Bank*

property within possession of the court,[5] recovery of postpetition attorneys' fees paid without bankruptcy court approval,[6] and motions for an award of attorneys' fees.[7]

If the court could be convinced to ignore the sale order and to allow the trustee to distribute the funds without regard to the rights of liens holders, it would direct the trustee to pay the funds to the Internal Revenue Service. The Internal Revenue Service levied on the funds since the dismissal of the case.[8] A trustee must honor any such levy notwithstanding section 1326(a)(2). *See Beam v. IRS (In re Beam)*, 192 F.3d 941, 944–45 (9th Cir. 1999).

The court concludes, for the reasons given above, that the sale order survives the dismissal of the case. Therefore, payment of the funds in the account to either the debtor because of the dismissal or to the Internal Revenue Service pursuant to its post-dismissal levy is inappropriate.[9]

Unless the debtor, the Internal Revenue Service, or one of the other unsatisfied lien holders files an action in this court within 30 days challenging the extent, validity, or priority of one or more of the liens identi-

fied in Paragraph 10 of the sale order, the trustee is instructed to distribute the funds to those lien holders in the order their respective liens were recorded. If all liens are paid in full, the surplus of funds shall be paid to the debtor and his spouse. If an action is filed, the trustee shall continue to hold the funds in the account pending a judgment in the action.

The parties will note that these instructions are different than those announced in open court.

The trustee shall lodge a conforming order. Once it is entered, he shall serve the order, this Memorandum, and a copy of the sale order on the debtor, counsel for the Internal Revenue Service, and all of the lien holders identified in Paragraph 10 of the sale order. The 30–day period to file the action described above shall begin to run 3 days after service of these documents.

---

of Commerce, 157 F.2d 214, 215 (8th Cir. 1946).

5. *See In re Ethington*, 150 B.R. 48, 51 (Bankr.D.Idaho 1993); *In re Harris*, 258 B.R. 8, 11–12 (Bankr.D.Idaho 2000); *Wesley Medical Center v. Wallace (In re Wallace)*, 46 B.R. 807 (Bankr.W.D.Mo.1984).

6. *See Willis v. Cruse (In re Samford)*, 125 B.R. 230, 234 (E.D.Mo.1991).

7. *See USA Motel Corp. v. Danning*, 521 F.2d 117, 119 (9th Cir.1975); *Dahlquist v. First National Bank in Sioux City (In re Dahlquist)*, 751 F.2d 295, 298 (8th Cir.1985); *In re Ethington*, 150 B.R. at 50–51.

8. Comparison of the Notice of Levy to the proof of claim filed by the Internal Revenue Service reveals that the levy concerns income

taxes for years 1993, 1994, 1996, 1997, 1998, and 1999. With the exception of the taxes demanded for 1998 and 1999 (which total $38,831.36), these taxes were part of the Internal Revenue Service's secured proof of claim. Thus, the Notice of Levy is attempting to collect $131,832.06 in taxes that are secured by tax liens. These tax liens are identified in Paragraph 10 of the sale order.

9. The Internal Revenue Service advanced alternative positions. It preferred that the funds be distributed to the lien holders in the order of their respective priorities. If the court was unwilling to do this, the Internal Revenue Service demanded the funds pursuant to its post-dismissal levy. The court is ordering the former.