In re Philip STEENSTRA, Debtor.

Commonwealth of Massachusetts,
Department of Revenue,
Appellant,

v.

Denise M. Pappalardo, Chapter
13 Trustee, Appellee.

In re Philip Steenstra, Debtor.

Commonwealth of Massachusetts,
Department of Revenue,
Appellant,

v.

Denise M. Pappalardo, Chapter 13 Trus-
tee, John Burdock, Chapter 7 Trustee,
and Philip Steenstra, Appellees.

BAP Nos. MW 02–080, MW 02–081.
Bankruptcy Nos. 01–40038–
HJB, 02–43289–HJB.

United States Bankruptcy Appellate Panel
for the First Circuit.

March 31, 2004.

Jeffrey S. Ogilvie, on brief, Boston, MA, for Appellant.

Joanne Psilos, on brief, for the Appellee, Denise M. Pappalardo, Chapter 13 Trustee.

Before LAMOUTTE, HAINES, and VAUGHN, U.S. Bankruptcy Appellate Panel Judges.

VAUGHN, Bankruptcy Judge.

In this consolidated appeal, the Commonwealth of Massachusetts Department of Revenue (the "MDOR" or "Appellant") appeals from the October 23, 2002 orders of the United States Bankruptcy Court for the District of Massachusetts (the "bankruptcy court") denying (1) its Motion for Order Authorizing and Directing the Chapter 13 Trustee to Comply with Tax Levy ("Levy Motion") and, (2) its Motion for Determination that the Automatic Stay Does Not Apply or, in the Alternative, For Relief From the Automatic Stay ("Stay Motion"). For the reasons set forth below, the order denying the Levy Motion is REVERSED, and the order denying the Stay Motion is VACATED and the issue is REMANDED to the bankruptcy court for a decision on the merits.

## BACKGROUND

On January 2, 2001, Philip Steenstra (the "Debtor") filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code.[1] The Debtor filed a plan of reorganization on January 17, 2001 and amended plans on May 7, 2001, November 21, 2001, and January 2, 2002. None of his plans were confirmed by the bankruptcy court. On January 29, 2002, the Chapter 13 Trustee (the "Trustee" or "Appellee") filed a Motion to Dismiss the Debtor's Chapter 13 case. The bankruptcy court dismissed the case on February 25, 2002 and denied the Debtor's Motion to Revoke the Dismissal Order on April 9, 2002.

Between January 2, 2001 and February 25, 2002, the Debtor made plan payments to the Trustee totaling approximately $7,104. On March 25, 2002 and April 17, 2002, MDOR served the Trustee with Notices of Levy requesting turnover of funds held by the Trustee in the amounts of $6,311.75 and $2,725.84, respectively. The Trustee did not comply with MDOR's requests and on May 7, 2002, MDOR filed its Levy Motion requesting that the Trustee turn over to MDOR the funds paid to the Trustee during the pendency of the Debtor's Chapter 13 case, "after deducting the Chapter 13 Trustee's administrative fees and expenses." App. at 46. The Trustee did not respond to the Levy Motion, but the Debtor filed a response on May 10, 2002. The Levy Motion was scheduled to be heard on June 4, 2002. However, on May 24, 2002, before the bankruptcy court held a hearing to consider the Levy Motion, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. On September 12, 2002, MDOR filed its Stay Motion, seeking a ruling by the bankruptcy court either that the stay did not apply to the enforcement of a tax levy, or, in the alternative, that MDOR was entitled to relief from the stay. On October 22, 2002, the bankruptcy court held a non-evidentiary hearing on both motions. After hearing argument on the Levy Motion, the bankruptcy court entered orders denying both the Levy Motion and the Stay Motion.

At the hearing, the bankruptcy court stated that it was denying the Levy Motion on two grounds. First, the bankruptcy court stated that " ... until the case is closed I consider the funds *in custodia legis.* They're in control, under the control of the Court, and in view of that, I think that the Chapter 13 Trustee is impervious to levy with respect to activities other than her own." App. at 188–89 (Transcript of October 22, 2002 Hearing).

---

1. Unless otherwise noted, all statutory references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

As an alternative ground for denying the Levy Motion, the bankruptcy court found that "[§] 1326(a)(2) is a directive to the Chapter 13 Trustee. It tells the Chapter 13 Trustee to return funds to the debtor [...] it is a directive, and to the extent that the Commonwealth seeks to direct the Trustee otherwise, it seems to me that the Commonwealth's directive is pre-empted." App. at 189–90 (Transcript of October 22, 2002 Hearing). After finding that MDOR did not have valid levies on the subject funds, it was unnecessary for the bankruptcy court to decide the merits of the Stay Motion, and, accordingly, the bankruptcy court denied the Stay Motion without further comment.

On October 31, 2002, MDOR filed separate notices of appeal, which the Panel consolidated on November 20, 2002, for purposes of briefing and oral argument.[2] Also on October 31, 2002, MDOR filed a motion for a stay of the order denying the Levy Motion pending this appeal. On November 7, 2002, after a hearing, the bankruptcy court granted the motion for a stay pending appeal, ordering the Trustee to deposit the subject funds in an interest bearing account pending further court order.

### JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to

do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). The instant appeals arise from final orders of the bankruptcy court.

### STANDARD OF REVIEW

Appellate courts reviewing an appeal from the bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). Where the issue on appeal is essentially one of statutory construction, the Panel reviews the issue *de novo*. In the present case, the bankruptcy court rendered its decision based upon its interpretation of § 1326(a)(2). Therefore, the only question presented on appeal is one of law and we review the bankruptcy court's conclusions *de novo*. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993).

### DISCUSSION

MDOR appeals from the bankruptcy court's finding that (1) the funds held by the Trustee were *in custodia legis* and not subject to levy until the case was closed, and (2) § 1326(a)(2) is a directive to the Trustee to return the funds to the Debtor and, to the extent that the state levying statute directs the Chapter 13 Trustee to

---

**2.** BAP No. 02–080 is the appeal from the order denying the Levy Motion in the Debtor's Chapter 13 case and BAP No. 02–081 is

the appeal from the order denying the Stay Motion in the Debtor's subsequent Chapter 7 case.

do otherwise, it is preempted by § 1326(a)(2). MDOR also appeals from the order denying its Stay Motion in the Debtor's subsequent Chapter 7 case.

## I. Levy Motion.

### A. The Applicable Statutes.

Resolution of this matter depends upon the interplay between two statutes, Mass. Gen. Laws ch. 62(C), §§ 53 & 54(a), and 11 U.S.C. § 1326(a)(2). In this case, MDOR issued the levies pursuant to Mass. Gen. Laws ch. 62(C), § 53, which authorizes the Commissioner of the MDOR to collect any unpaid taxes "by levy upon all property and rights to property belonging to such person." Further, Mass. Gen. Laws ch. 62(C), § 54 provides in pertinent part that:

> [A]ny person in possession of, or obligated with respect to, property or rights to property subject to levy upon which a levy has been made shall, upon demand of the commissioner, surrender such property or rights, or discharge such obligation, to the commissioner [ . . . ].

Mass. Gen. Laws ch. 62(C), § 54(a).

However, Section 1326(a)(2) of the Bankruptcy Code provides that:

> A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute such payment in accordance with the plan as soon as practicable. *If a plan is not confirmed, the trustee shall return any such payment to the debtor,* after deducting any unpaid claim allowed under section 503(b) of this title.

11 U.S.C. § 1326(a)(2) (emphasis added).

As set forth above, the bankruptcy court concluded that to the extent the MDOR's directives under the Massachusetts statute conflict with the mandate of § 1326(a)(2), then the MDOR's directives are "pre-

empted." The bankruptcy court found, therefore, that § 1326(a)(2) compels a determination that the Chapter 13 trustee must return plan payments made in the dismissed case to the Debtor. We disagree.

### B. The Effect of Dismissal on the Estate and the Automatic Stay.

 To begin our analysis, we find that § 1326(a)(2) cannot be read alone, but must be viewed in conjunction with the statutory effects of denying confirmation of a Chapter 13 plan, dismissal of the case and the automatic stay. Under § 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate that comprises all legal and equitable interests of the debtor in property as of the date the bankruptcy case is commenced. *See* 11 U.S.C. § 541(a). Moreover, subject to limited exceptions, the filing of a petition for relief automatically stays all acts against a debtor and property of the estate. *See* 11 U.S.C. § 362(a). The definition of property of the estate in a Chapter 13 case is broader than in other chapters of the Bankruptcy Code. In a Chapter 13 case, property of the estate includes, in addition to the property described in § 541, all property acquired by the debtor post-petition and all post-petition earnings of the debtor. *See* 11 U.S.C. § 1306(a)(1)–(2); *see also In re Doherty,* 229 B.R. 461, 462–63 (Bankr.E.D.Wash.1999). Clearly, prior to dismissal of the Debtor's Chapter 13 case, the funds held by the Trustee were property of the estate and protected by the automatic stay.

 Although the Bankruptcy Code is not specific as to when the bankruptcy estate terminates, the First Circuit has held that dismissal of the bankruptcy petition ordinarily terminates the estate and the automatic stay. *See In re de Jesús Saez,* 721 F.2d 848, 851 (1st Cir.1983).

This proposition is supported by § 362(c)(1), which provides that "the stay of an act against property of the estate . . . continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1); *see also de Jesús Saez*, 721 F.2d at 851. Moreover, since dismissal of the bankruptcy case revests the property of the estate in the party that owned it prior to the filing of the petition, *see* 11 U.S.C. § 349(b)(3), there is no bankruptcy estate after the dismissal has been entered. *de Jesús Saez*, 721 F.2d at 851. As the First Circuit noted in *de Jesús Saez*:

> Section 362(c) provides that the stay continue as to creditor conduct not directed against property of the estate, *only until dismissal,* and as to conduct directed against such property, only so long as it remains in the estate. It seems self evident that there is no "estate" and hence no "property of the estate" unless there is an existing petition.

*Id.* at 851 (emphasis added). Therefore, dismissal of a bankruptcy petition "has the simultaneous effect of undoing the bankruptcy estate and lifting the automatic stay, just as the filing of the petition creates the bankruptcy estate and imposes the automatic stay." *In re Garnett*, 303 B.R. 274, 278 (E.D.N.Y.2003). In the instant case, the bankruptcy estate and the automatic stay terminated immediately upon the docketing of the dismissal order. As set forth above, once the bankruptcy petition is dismissed and the estate terminates, § 349(b)(3) provides that the former property of the bankruptcy estate revests in the entity which held the property prior to the commencement of the case. *See* 11 U.S.C. § 349(b)(3).[3] Moreover, § 1326(a)(2) provides that post-peti-

tion funds received by the Chapter 13 trustee should be returned to the debtor if the case is dismissed prior to confirmation. *See* 11 U.S.C. § 1326(a)(2). Reading these two sections together, it is clear that upon dismissal of a Chapter 13 case, funds held by the Chapter 13 trustee are generally revested to the debtor and no longer protected by the automatic stay.

 It is important to note, however, that although the revesting provisions of § 349 and § 1326(a)(2) would place the subject funds back in the hands of the Debtor, the revestment is not immediate or automatic. Section 1326(a)(2) states that administrative expenses allowed pursuant to § 503(b) are to be paid out of the funds on hand if the plan is not confirmed. *See* 11 U.S.C. § 1326(a)(2). Therefore, before the funds may be returned to the debtor, the Chapter 13 trustee must complete the administration of the case, including making payments for expenses related to the administration of the estate. *Doherty*, 229 B.R. at 464. Accordingly, the funds required to pay the administration expenses allowed by § 503(b) are protected from levy or garnishment. *Id.* The question then becomes whether or not the remaining funds are also protected from levy or garnishment once the automatic stay has terminated.

### C. Existing Case Law.

Looking at the existing case law on this issue, we find that there are differing views among bankruptcy courts. Some bankruptcy courts considering the issue have found that funds held by a Chapter 13 trustee after dismissal of the underlying bankruptcy case prior to confirmation of a plan are subject to levy. *See, e.g., In re*

---

**3.** Section 349(b)(3) provides: "Unless the court, for cause, orders otherwise, a dismissal of a case [. . .] revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

*Doherty,* 229 B.R. at 461; *In re Mishler,* 223 B.R. 17 (Bankr.M.D.Fla.1998); *In re Schlapper,* 195 B.R. 805 (Bankr.M.D.Fla. 1996). Other bankruptcy courts interpreting § 1326(a)(2) have concluded that when a trustee is holding undistributed funds paid by a debtor, the plain meaning of the statute dictates that the funds be returned to the debtor. *See, e.g., In re Oliver,* 222 B.R. 272, 273–74 (Bankr.E.D.Va.1998) (holding that § 1326(a)(2) mandates Chapter 13 trustee to return any undistributed funds to debtor after paying attorney's fees); *In re Walter,* 199 B.R. 390, 391–92 (Bankr.C.D.Ill.1996) (ordering trustee to return undistributed funds to debtor pursuant to clear terms of § 1326(a)(2)); *In re Clifford,* 182 B.R. 229 (Bankr.N.D.Ill.1995) (ordering trustee to return any undistributed funds to debtor, subject to the taxing authority's liens).

We find the holding of *Doherty* to be persuasive. In *Doherty,* after the bankruptcy court dismissed the debtors' Chapter 13 case without confirming a plan, the Washington Department of Revenue served the Chapter 13 trustee with a notice and order to withhold and deliver funds being held on behalf of the debtors, based on a pre-petition tax warrant. 229 B.R. at 462. The trustee filed a motion to quash the notice and order. *Id.* The bankruptcy court denied the trustee's motion to quash the order, holding that the funds owed to the debtors after administrative expenses were deducted were subject to the notice and order. *Id.* at 466–67. The *Doherty* court reasoned that because the dismissal order terminated the automatic stay, there was no stay in place to protect the funds held by the trustee after the court entered the dismissal order. *Id.* at 463. Because the dismissal of a bankruptcy case prior to confirmation removes the protections afforded by the Bankruptcy Code, the funds belonging to the debtor but which are held by the trustee are not afforded protection from levy merely because they were once part of the estate. *Id.* at 466.

> The Bankruptcy Code grants protection to debtors and their property in quite specific provisions. The automatic stay provision of § 362 protects both the debtors and the property of their estates. Those protections terminate upon the dismissal of the case. The language of § 1326(a)(2) does not clearly extend those protections beyond the entry of the order of dismissal.

*Id.* Consequently, the *Doherty* court concluded that the funds held by the trustee after deduction of administrative expenses were subject to the state's levy.

Moreover, in rendering its decision, the *Doherty* court specifically rejected the bankruptcy court's holding in *In re Clifford, supra.* In *Clifford,* the Illinois Department of Revenue ("IDOR") obtained a statutory lien on funds held by the Chapter 13 trustee that had not been distributed under a plan. After the case was dismissed, the IDOR served a levy on the trustee attempting to seize the funds. Although the *Clifford* court recognized the IDOR's lien, the court directed that the funds be disbursed to the debtor subject to the liens, thereby leaving the IDOR to pursue its funds in state court. 182 B.R. at 232. The *Doherty* court found that "this solution is not attractive to this court. Judicial economy suggests that any issues regarding the funds should be resolved in bankruptcy court." *Doherty,* 229 B.R. at 466. The *Doherty* court noted that leaving the lien creditor with the obligation to complete its pursuit of the funds in state court "was not an attractive solution." *Id.*

█ Consequently, we conclude that because the dismissal of a bankruptcy case prior to confirmation removes the protections afforded by the Bankruptcy Code,

the funds held by a Chapter 13 trustee after administration of the estate are not afforded protection from levy. Therefore, although § 1326(a)(2) mandates that the Chapter 13 trustee return such funds to the debtor after deducting allowed administrative expenses, a taxing authority such as the MDOR is entitled to levy such funds after dismissal and prior to disbursement by the trustee. As one court has noted:

[T]he Court finds that, once the order of dismissal is entered, and the stay has been lifted, and the Trustee has been ordered to turn over the funds to the Debtor, she becomes a debtor of the Debtor to that extent. The funds held by the Trustee are subject to levy or garnishment by creditors of the Debtor, pursuant to applicable law. The Trustee is bound to accept the levy if she has any money that belongs to the Debtor.

*In re Schlapper*, 195 B.R. at 806. Consequently, we find that the bankruptcy court erred in determining that the MDOR's liens were invalid and in denying the Levy Motion. Accordingly, we reverse the order denying the Levy Motion.

### D. Custodia Legis Doctrine

As an alternative ground for denying the Levy Motion, the bankruptcy court cited the doctrine of *in custodia legis*, stating that the subject funds were not subject to levy because they were within the bankruptcy court's custody and control. *See* App. at 188–89.

■ From the moment that a debtor's petition is filed in the bankruptcy court, the debtor's property is *in custodia legis*. *See Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021 (1st Cir. 1995) (*citing* 1 William C. Norton, Jr., *Norton Bankruptcy Law and Practice* 2d § 3:2 (1994)). From that point forward, the bankruptcy court is responsible for

overseeing the trustee's management of property that is *in custodia legis* in order to ensure that the interests of the bankruptcy estate are served. *Id.* at 1025–26. While property is *in custodia legis*, it is not subject to levy or attachment in any form. *See Cox v. Cox*, 356 F.3d 76, 93 n. 16 (1st Cir.2004). However, once the case is dismissed and the automatic stay is terminated, the property of the estate revests in the debtor and the doctrine of *in custodia legis* no longer applies.

The Trustee argues, however, that even though the dismissal of a case terminates the automatic stay and revests property in the debtor, the bankruptcy court does not lose power to order the disposition of undistributed funds. Appellee's Brief at 11–12. The Trustee argues that dismissal only moots issues involving the debtor's reorganization but does not moot issues which are ancillary or collateral to the bankruptcy case. *Id.* In support this argument, the Trustee relies on *In re Witte*, 279 B.R. 585 (Bankr.E.D.Cal.2002). As the Appellant notes in its Reply Brief, *Witte* is distinguishable from the present case. In *Witte*, the bankruptcy court approved the sale of the debtor's real estate and ordered that the Chapter 13 Trustee hold the proceeds "until further order." After the case was dismissed without a confirmed plan, the debtor sought turnover of the funds pursuant to 1326(a)(2). Denying the debtor's request, the court noted that the money held by the trustee was not a payment under the plan. *Id.* at 587. This distinguishes *Witte* from the present case, where the subject funds were, in fact, payments made under the plan.

■ Moreover, the *Witte* court also noted that "its jurisdiction was expressly reserved in [...] the sale order." *Id.* In the present case, the bankruptcy court did not retain jurisdiction by way of a specific

order and therefore, its jurisdiction was limited to "ancillary matters." Such jurisdiction does not have any bearing on the doctrine of *in custodia legis*, which relates to specific funds held by the court for a specific purpose. "[W]here nothing more remains for the custodian to do but make delivery of the property or payment of the money, the reason for the doctrine of *in custodia legis* is satisfied [...]." *United States v. Powell*, 492 F.Supp. 1030, 1032 (W.D.Tex.1980), *aff'd*, 639 F.2d 224 (1981).

 Because the doctrine of *in custodia legis* no longer applied to the funds held by the Trustee after dismissal of the bankruptcy case without a confirmed plan, the bankruptcy court erred in denying the Levy Motion on the basis of the *in custodia legis* doctrine.

## II. Stay Motion

As set forth above, in denying the Levy Motion, the bankruptcy court found that MDOR's liens were invalid since the subject funds were *in custodia legis* and, consequently, the Trustee was "impervious to levy." App. at 188–89. Since the bankruptcy court concluded that the MDOR's tax liens were invalid, it was unnecessary for the bankruptcy court to decide the merits of the MDOR's request for relief from stay. Therefore, the bankruptcy court denied the Stay Motion.

However, as noted above, the bankruptcy estate and the automatic stay terminated immediately upon the docketing of the dismissal order. Therefore, since there was no post-dismissal stay of actions against the Debtor or the Debtor's property, the MDOR was free to take the necessary actions to enforce its tax liens without seeking relief from the stay. Thus, MDOR's tax levies were valid. However, although the funds were subject to MDOR's levy and, consequently, the Trustee should have turned the funds over

to the MDOR, the Debtor filed Chapter 7 before any funds passed to MDOR. Consequently, the funds held by the Trustee became part of the Debtor's Chapter 7 case subject to the MDOR's liens. With the commencement of the Debtor's Chapter 7 case, the funds, as property of the new Chapter 7 estate, were protected by the automatic stay. Accordingly, we remand the matter to the bankruptcy court for a determination on the merits of MDOR's Stay Motion.

## CONCLUSION

For the reasons set forth above, the Panel finds that the bankruptcy court erred in denying the Levy Motion and, accordingly, the bankruptcy court's order denying the Levy Motion is REVERSED. Moreover, the Panel VACATES the order denying the Stay Motion and REMANDS the matter to the bankruptcy court for a determination on the merits.