# United States Court of Appeals
## For the First Circuit

No. 20-9008

IN RE LAXMI SARAH SUNDARAM,

Debtor.

LAXMI SARAH SUNDARAM,

Appellant,

v.

BRIRY, LLC,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
FOR THE FIRST CIRCUIT

Before

Thompson, Selya, and Kayatta,
<u>Circuit Judges</u>.

<u>David G. Baker</u> on brief for appellant.
<u>Robert A. Mitson</u> and <u>Mitson Law Associates</u> on brief for
appellee.

August 13, 2021

**SELYA**, **Circuit Judge**. Article III of the Constitution grants the federal judiciary the authority to adjudicate cases and controversies, see U.S. Const. art. III, § 2, cl. 1, but that authority extends only to live cases and controversies, not to those which are or have become moot, see Chafin v. Chafin, 568 U.S. 165, 172 (2013). This appeal, which poses a question of first impression for this court, offers a paradigmatic example of that principle. The Bankruptcy Appellate Panel for the First Circuit (the BAP) dismissed this appeal as moot, and we affirm.

We briefly rehearse the relevant facts and travel of the case. On July 5, 2016, Briry, LLC (Briry) made a commercial loan to Global Investments/India Portfolio, Inc. (Global), a corporation wholly owned by debtor-appellant Laxmi Sarah Sundaram. To memorialize the loan, the appellant, on behalf of Global, executed an interest-bearing promissory note (the Note) in the face amount of $120,000. The appellant personally guaranteed payment of the Note. Additionally, the Note was secured by a mortgage on the appellant's home in North Providence, Rhode Island (title to which was then in Global's name). By its terms, the Note was payable in installments, but contained a balloon-payment provision making the entire balance payable at the noteholder's option "upon the earlier of: 1) the transfer of the real property secured by the [N]ote or 2) the maturity date of January 7, 2017."

On January 6, 2017 (one day before the maturity date specified in the Note), the appellant executed a quitclaim deed purporting to transfer title of her home from Global to herself. This transfer, made without Briry's knowledge or consent, constituted a default under the Note. On October 25, 2017, Briry notified the appellant that the Note was in default and demanded payment of the outstanding balance, plus accrued interest, costs, and attorneys' fees. The appellant did not comply.

Less than three months later (on January 18, 2018), a water pipe burst and rendered the appellant's home uninhabitable. The appellant submitted a claim for the resulting damage to United Property Casualty Insurance Company (United). According to the policy documents, the appellant was named as an insured party and Briry, qua mortgagee, was named as an additional party in interest.

The appellant retained a public adjuster to handle her insurance claim. When the claim was settled, United initially issued a draft in the amount of $62,323.90 for interior structural damage, payable to the appellant, Briry, and the public adjuster. This draft was not negotiated, though, and grew stale while in the possession of the appellant's lawyer. On July 12, 2019, United issued a replacement draft, making it payable to the appellant, the appellant's lawyer, and Briry's lawyer.

Meanwhile — on September 3, 2018 — the appellant filed for chapter 13 bankruptcy in the United States Bankruptcy Court

for the District of Massachusetts. Her initial petition was dismissed without prejudice and — on September 9, 2019 — the appellant refiled for chapter 13 bankruptcy protection. This petition, too, was filed in the District of Massachusetts but was later transferred to the District of Rhode Island (after the appellant's home had become habitable and she had resumed her residency there). The insurance funds were paid over to John Boyajian, the chapter 13 trustee (the Trustee), to be held in escrow pursuant to an order of the bankruptcy court.

On December 6, 2019, Briry filed a motion in the bankruptcy case, seeking payment to it of the insurance funds. Briry premised its motion on a provision in the mortgage documents stipulating that any home-insurance proceeds be paid directly to Briry should the Note be in default. On December 26 — without any objection from the appellant — the bankruptcy court granted Briry's motion and ordered the Trustee to pay over the insurance funds to Briry.

The appellant did not seek to stay this order but, rather, moved for reconsideration. In support, she noted, among other things, that Briry was listed on the policy as an "additional interest" and not as an "additional insured" or "co-insured." Building on this foundation, she argued that Briry was a stranger to the insurance contract and had no legitimate claim to the insurance settlement. On December 30 — while her motion for

reconsideration was pending — the appellant moved to dismiss her bankruptcy case. See 11 U.S.C. § 1307(b).

On January 22, 2020 — while the appellant's motion to dismiss was still pending — the bankruptcy court held a hearing on the motion for reconsideration. Briry informed the court that the Trustee already had released the funds to it and that it had applied the funds to reduce the balance due on the Note.[1] Pointing out that it previously had found (and the appellant had admitted) that Briry had a lien on the funds, the court denied the motion for reconsideration. At the same time, the court advised the parties that it was prepared to grant the appellant's motion to dismiss. Without objection, the appellant's bankruptcy case was dismissed that very day. No plan for the repayment of the appellant's debts was ever confirmed.

The appellant appealed to the BAP. Her appeal challenged both the bankruptcy court's order releasing the insurance funds to Briry and the court's denial of the appellant's motion for reconsideration. It did not purport to challenge the order of dismissal.

The BAP ordered the appellant to show cause as to why her appeal had not been rendered moot by the dismissal of the

---

[1] The appellant does not dispute that the balance due on the Note exceeded the amount of the funds transferred to Briry by the Trustee.

bankruptcy case.  The appellant responded that her appeal was not one of the "certain types of appeals" that are rendered moot by dismissal because it did not concern the "reorganization of [her] estate."  See Castaic Partners II, LLC v. DACA-Castaic, LLC (In re Castaic Partners II), 823 F.3d 966, 969 (9th Cir. 2016) ("In a bankruptcy appeal, when the underlying bankruptcy case is dismissed . . . , there is likely no longer any case or controversy 'with respect to issues directly involving the reorganization of the estate.'" (quoting Olive St. Inv., Inc. v. Howard Sav. Bank, 972 F.2d 214, 215 (8th Cir. 1992) (per curiam))).  Because her appeal concerned only erroneously disbursed funds, she averred, it was not moot.  The BAP was not persuaded:  it proceeded, in an unpublished judgment, to dismiss the appeal as moot.  This timely second-tier appeal followed.

The correctness of the BAP's determination that the appeal has become moot presents a pure question of law.  Further appellate review is, therefore, de novo.  See Hower v. Molding Sys. Eng'g Corp., 445 F.3d 935, 937-38 (7th Cir. 2006); Ramírez v. Sánchez Ramos, 438 F.3d 92, 96 (1st Cir. 2006).

Our analysis begins — and ends — with a threshold question.  That threshold question is jurisdictional in nature.  Federal courts lack jurisdiction to adjudicate moot cases, see Barr v. Galvin, 626 F.3d 99, 104 (1st Cir. 2010), and the threshold question here turns on whether the appeal has been rendered moot

- 6 -

by the appellant's voluntary dismissal of the underlying bankruptcy case.

Jurisdictional mootness (also known as Article III mootness) occurs when a court can no longer provide any meaningful relief.[2]  See Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 471-72 (1st Cir. 1992).  A live case may become moot in this sense when a court loses jurisdiction over the subject matter of the litigation due to some intervening event.  See, e.g., Matt v. HSBC Bank USA, N.A., 783 F.3d 368, 372-73 (1st Cir. 2015).  A prime example is when the issue on appeal is directly related to an underlying bankruptcy case and the underlying case is itself dismissed.  See, e.g., Neidich v. Salas, 783 F.3d 1215, 1216 (11th Cir. 2015); United States Internal Revenue Serv. v. Pattullo (In re Pattullo), 271 F.3d 898, 901 (9th Cir. 2001).  As long as the issue involves matters pertaining to the attempted reorganization of the debtor's estate, the appeal is moot because no live case or controversy persists.  See In re Castaic Partners II, 823 F.3d at 968-69; Melo v. GMAC Mortg., LLC (In re Melo), 496 B.R. 253, 256 (B.A.P. 1st Cir. 2013).

The rationale for this rule is straightforward.  Once the underlying bankruptcy proceeding is dismissed, the possibility

---

[2] Jurisdictional mootness is sometimes viewed separately from equitable mootness.  See Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.), 963 F.2d 469, 472 (1st Cir. 1992).  The case at hand does not implicate equitable mootness.

of reorganization evaporates. Thus, the goal of reorganizing the debtor's affairs is no longer attainable, and the parties no longer have a live or continuing interest in the outcome. See Olive St. Inv., 972 F.2d at 216. At that point, any opinion that a reviewing court might provide would be merely advisory, as there is no longer any underlying bankruptcy proceeding to which the case could be remanded. See In re Melo, 496 B.R. at 256 ("In the absence of a chapter 13 case and the prospect of such reorganization, it no longer serves any purpose to determine whether the bankruptcy court properly entered summary judgment."); see also Chafin, 568 U.S. at 172 (holding that federal courts cannot issue advisory opinions).

This appeal appears to fit seamlessly into that taxonomy. After all, the insurance funds were paid over to Briry as part of the anticipated reorganization of the debtor's estate, and there is now no pending bankruptcy proceeding or bankruptcy estate to which the funds could be restored for redistribution. See Viegelahn v. Lopez (In re Lopez), 897 F.3d 663, 670 (5th Cir. 2018) (explaining that "the bankruptcy estate ceases to exist upon dismissal").

Here, however, the appellant tries to throw a wrench into the works. She strives to take advantage of the fact that the rule that dismissal of an underlying bankruptcy case moots a pending appeal is not without exceptions. That is true as far as it goes — but it does not take the appellant very far.

- 8 -

The principal exception to the general rule provides that an appeal is insulated from mootness following the dismissal of the underlying bankruptcy case if the issue on appeal is merely ancillary to the bankruptcy. See, e.g., Spacek v. Thomen (In re Universal Farming Indus.), 873 F.2d 1334, 1335-36 (9th Cir. 1989) (holding that question involving status of trust deed was not "so closely linked to the underlying bankruptcy" as to render appeal moot); Dahlquist v. First Nat'l Bank in Sioux City (In re Dahlquist), 751 F.2d 295, 298 (8th Cir. 1985) (holding that question of reasonable compensation for attorneys was ancillary to underlying bankruptcy and was not rendered moot by dismissal). The appellant does not argue in so many words that her appeal involves an ancillary matter. But in all events, it is clear that her appeal does not involve an ancillary matter. The insurance-settlement funds were placed in the hands of the Trustee in the course of the anticipated reorganization of the bankruptcy estate, and there is no principled way in which it can be said that the appellant's claim to those funds is "ancillary" to the putative reorganization. See In re Dahlquist, 751 F.2d at 298 (noting that a claim is "ancillary" only if it is not "directly related to any decision by the Bankruptcy Court in reorganizing the estate").

Nevertheless, the appellant argues on other grounds that her appeal warrants an exception to the general rule and, thus, evades the mootness bar. Citing the Ninth Circuit's decision in

Salomon v. Logan (In re Int'l Env't Dynamics, Inc.), 718 F.2d 322, 326 (9th Cir. 1983) (holding appeal not moot because court could still "fashion effective relief by remanding with instructions to the bankruptcy court to order the return of erroneously disbursed funds"), she reasons that her appeal does not involve the reorganization of her estate. In her view, the answer to the issue that she presses on appeal — whether funds were erroneously disbursed — is a matter of statutory construction, dictated by the Bankruptcy Code. As the appellant sees it, the distribution to Briry was in direct contravention of 11 U.S.C. § 1326(a)(2) and 11 U.S.C. § 349(b)(3). The upshot, the appellant contends, is that the erroneously disbursed funds must be redirected despite the dismissal of the underlying bankruptcy proceeding.

The appellant's contention has a patina of plausibility. As a general matter, if a chapter 13 bankruptcy is dismissed prior to the confirmation of a repayment plan, 11 U.S.C. § 1326(a)(2) and 11 U.S.C. § 349(b)(3), read together, require the Trustee to return all funds on hand to the debtor.[3] See Jeffrey P. White & Assocs., P.C. v. Fessenden (Wheaton), 547 B.R. 490, 498 (B.A.P. 1st Cir. 2016) (holding that "§§ 349(b)(3) and 1326(a)(2) govern

---

[3] Section 1326(a)(2) provides that "[i]f a plan is not confirmed, the trustee shall return any [funds] . . . to the debtor." Similarly, section 349(b)(3) requires a chapter 13 trustee, following the dismissal of a bankruptcy case, to "revest[] the property of the estate in the entity in which such property was vested immediately before the commencement of the case."

the trustee's disbursement of funds in a chapter 13 case that has been dismissed pre-confirmation"). The rather large fly in the ointment, though, is that the appellant's contention blurs the sequence of events, and this blurring alters the outcome of the inquiry. We explain briefly.

To trigger either section 1326 or section 349, the funds in question must be physically in the possession of the chapter 13 trustee at the time the order of dismissal is entered. See 11 U.S.C. § 1326(a)(2) ("If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors . . . to the debtor."); see also id. § 349(b)(3) (providing that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title"); Mass., Dep't of Revenue v. Pappalardo (In re Steenstra), 307 B.R. 732, 738 (B.A.P. 1st Cir. 2004) (stating that, once bankruptcy proceedings are dismissed and bankruptcy estate is terminated by "docketing of the dismissal order . . . , funds held by the Chapter 13 trustee are generally revested to the debtor"). Fairly viewed, then, the appellant's claim hinges on whether the funds were in the Trustee's possession when her underlying bankruptcy case was dismissed. The record makes manifest that the bankruptcy court ordered the release of the insurance-settlement funds four days before the appellant filed her motion to dismiss. So, too, the

- 11 -

record makes manifest that, pursuant to the court's order, those funds were disbursed to Briry prior to the entry of the order of dismissal.

Given this sequence of events, the statutory provisions cited by the appellant are inapposite. The same is true for the case law that the appellant cites. In this regard, the appellant relies primarily on the decisions in Wheaton, 547 B.R. at 493-95, and in In re Steenstra, 307 B.R. at 735-36. Her reliance is misplaced: in both instances, the trustee still had possession of the disputed funds when the bankruptcy case was dismissed. See Wheaton, 547 B.R. at 493-95; In re Steenstra, 307 B.R. at 735-36. Neither decision discusses the status of funds already distributed.

The fact of distribution makes a dispositive difference. Because the Trustee did not have the disputed funds in his possession when the case was dismissed, the order of dismissal rendered the present appeal moot.

The appellant has a fallback position. She submits that appeals concerning money alone are not rendered moot by the dismissal of the underlying bankruptcy case because "[i]f there is any chance of money changing hands," the controversy remains live. Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S. Ct. 1652, 1660 (2019); see Mission Prod. Holdings, Inc. v. Schleicher & Stebbins Hotels, LLC (In re Old Cold, LLC), 976 F.3d 107, 115-16

(1st Cir. 2020). This reasoning, the appellant insists, precludes a finding of mootness even if the money has already changed hands since the reviewing court can simply unwind any disbursements.

The appellant's invocation of Mission Product Holdings and In re Old Cold does not assist her cause. Although both courts found that a claim of erroneously distributed funds engendered a live controversy, each of them made that statement in the context of ongoing litigation: the underlying bankruptcy case had not been dismissed.[4] See Mission Prod. Holdings, 139 S. Ct. at 1661; In re Old Cold, 976 F.3d at 115-16. Although it has sometimes been said that "nothing [] shows a continuing stake in a dispute's outcome as a demand for dollars and cents," Mission Prod. Holdings, 139 S. Ct. at 1660, that conventional wisdom does not extend to cases in which the underlying bankruptcy proceedings already have been dismissed. In bankruptcy, "federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings," In re Stat. Tabulating Corp., Inc., 60 F.3d 1286, 1289 (7th Cir. 1995), and the jurisdictional calculus changes once the underlying case is dismissed. So it is here.

We hold, as did the BAP, that the revesting function of section 349 cannot reach out to grasp funds already distributed

---

[4] The same sequencing renders inapposite the decision in In re International Environmental Dynamics, 718 F.2d at 326, (another case relied upon by the appellant).

- 13 -

prior to the dismissal of a chapter 13 case. Given that limitation, the BAP was no longer able to offer any meaningful relief in connection with the appellant's appeal. When the bankruptcy case was dismissed, the appeal became moot.

We need go no further. For the reasons elucidated above, the BAP's dismissal of the appeal as moot is

**Affirmed**.