In re Ronald WILLIAMS and Dana M. Morgan–Williams, Debtors.

Ronald Williams and Dana M. Morgan–Williams, Plaintiffs,

v.

Marilyn O. Marshall, Chapter 13 Trustee, Defendant.

Bankruptcy No. 08 B 31707. Adversary No. 11 A 2415.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 13, 2013.

Kristin K. Beilke, Dale A. Riley, Justin R. Storer, Geraci Law L.L.C., Chicago, IL, for Plaintiffs.

Anthony Olivadoti, Office of Marilyn O. Marshall, Chicago, IL, for Defendant.

## ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

PAMELA S. HOLLIS, Bankruptcy Judge.

This matter comes before the court on the motion of Plaintiffs Ronald Williams and Dana Morgan–Williams for judgment on the pleadings. Plaintiffs filed a complaint against Marilyn O. Marshall, Chapter 13 Trustee, seeking turnover of all funds still on hand at the time their bankruptcy case was dismissed. The court has reviewed the complaint, answer and attached exhibit, and for the reasons stated below grants the motion.

### FACTUAL BACKGROUND

In order to determine the facts upon which this motion can be decided, the court reviewed the court docket, complaint, attached exhibit and answer. Many of the allegations in the complaint were admitted in the answer.

Plaintiffs filed for relief under Chapter 13 on November 20, 2008. At the time the complaint was filed, they resided at 1008

South 7th Avenue, Maywood, Illinois. Marilyn Marshall is the Chapter 13 Trustee to whom their bankruptcy case was assigned.

Their plan, as confirmed, called for the Plaintiffs to pay to the Trustee $4,625 per month, which she would then disburse to their various creditors. The plan payments were made by payroll deduction.

In June 2010, Mr. Williams' income was temporarily interrupted and Plaintiffs' payments to the Trustee faltered.

On April 29, 2011, Deutsche Bank National Trust Company filed a motion for relief from stay for failure to make postpetition mortgage payments. The motion was noticed for hearing and granted on May 9, 2011.

On May 2, 2011, the Trustee filed a Motion to Dismiss for Failure to Make Plan Payments. The Trustee's motion alleged a default in the amount of $15,693.55 and was noticed for hearing on May 23, 2011. The Trustee's motion was continued from May 23 to June 13 and then to June 27, 2011.

In June 2011, Plaintiffs tendered $15,700 to the Trustee. On June 27, 2011, the Trustee withdrew her motion to dismiss.

In July 2011, Mr. Williams returned to full employment and payroll deductions to the Trustee resumed from his paycheck. Payroll deductions were never interrupted from Mrs. Morgan–Williams' check.

Plaintiffs voluntarily dismissed their bankruptcy case on September 26, 2011.

The Trustee continues to hold certain funds received prior to the September 26, 2011, order dismissing the case.

## LEGAL ANALYSIS

Fed.R.Civ.P. 12(c), made applicable by Fed. R. Bankr.P. 7012, provides that after the pleadings are closed, a party may move for judgment on the pleadings. On a motion for judgment on the pleadings, the court views the facts in the complaint in the light most favorable to the non-moving party. *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Granting a motion for judgment on the pleadings is appropriate only where there are no material allegations of fact in dispute and the movant is entitled to judgment as a matter of law. *Cagan v. Intervest Midwest Real Estate Corp.*, 774 F.Supp. 1089, 1091 n. 2 (N.D.Ill.1991).

> In a motion for judgment on the pleadings, the court considers the pleadings alone, which consist of the complaint, the answer, and any written instruments attached as exhibits.... Where the plaintiff moves for judgment on the pleadings, 'the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position.'

*Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority*, 378 F.3d 596, 600 (7th Cir.2004) (citations and quotation omitted).

As the Seventh Circuit tells us, "Rule 12(c) permits a judgment based on the pleadings alone." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir.1998). The pleadings are the complaint, the answer, and any written instrument that is attached as an exhibit. *Housing Authority Risk Retention Group*, 378 F.3d at 600; Fed.R.Civ.P. 10(c). The Seventh Circuit has historically "interpreted the term 'written instrument' ... to include documents such as affidavits and letters, as well as contracts and loan documentation." *Northern Indiana Gun*, 163 F.3d at 453 (citations omitted). Plaintiffs attached only one exhibit to their complaint, a printout titled "Receipt Information" from Marshall's website.

The court finds no material facts in dispute, and the matter is ripe for resolution as an issue of law. That issue is: "What happens to funds paid by Chapter 13 debtors to the trustee but not yet distributed to creditors when a bankruptcy case is dismissed post-confirmation?"

Plaintiffs initially argue that the funds being held by the Trustee are of inconsequential value and benefit to the estate, and should therefore be abandoned back to them. 11 U.S.C. § 554(b). However, Plaintiffs did not mention abandonment in their reply, and the court will not address this irrelevant argument herein.

The Trustee asserts that the funds she holds should be disbursed to creditors in accordance with the confirmed plan, pursuant to 11 U.S.C. § 1326(a)(2):

A payment made under paragraph [§ 1326(a) ](1)(A) shall be retained by the trustee until confirmation or denial of confirmation. *If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.* If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

Relying on the second sentence of paragraph (a)(2), which is highlighted above, the Trustee concludes that she must "distribute all funds on hand as soon a[s] practicable to creditors pursuant to the confirmed plan. Thus the bankruptcy code is clear, that all funds received are to be distributed according to a confirmed plan." Response at 2. Plaintiffs disagree, arguing that (a)(2) requires only disbursement in accordance with the plan of *funds held at the time the plan is confirmed,* and

therefore these post-confirmation payments that have not yet been disbursed must be returned to them.

For further support of her argument, the Trustee cites § 1326(c):

Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

Plaintiffs argue that "[s]ection 1326(c)'s obligation to pay, however, is vacated upon entry of an order dismissing the case. Section 349(b)(3) mandates it be so." Reply at 3.

Pursuant to 11 U.S.C. § 349(b)(3):

Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—...

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

One commentator frames the issue: "If a plan was confirmed, the requirement in § 1326(a)(2) that the trustee distribute any payments received from the debtor in accordance with the plan collides at dismissal with the revesting of property of the estate under § 349(b)(3)." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Ed., § 338.1, at ¶ 17, Sec. Rev. June 16, 2004, www.Ch13online.com.

Plaintiffs argue that since, when a case is dismissed, § 349(b) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case, all funds paid into the plan but not yet distributed are revested in the Debtors.

Precedent is split along the lines drawn by Plaintiffs and the Trustee.[1] The case

---

1. Much of the case law deals with the situation where a case is converted from Chapter

law supporting Plaintiffs' position began with *In re Nash*, 765 F.2d 1410 (9th Cir. 1985). In *Nash*, the Ninth Circuit stated that funds received by a Chapter 13 Trustee through wage deductions, but not yet distributed to creditors, reverted to the debtors upon dismissal:

> [O]wnership over all of the property of the estate, including the [funds received by the trustee before dismissal], vested in the Nashes once the plan was confirmed.
>
> The Nashes' ownership of the [funds] is further supported by the fact that a Chapter 13 dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

765 F.2d at 1414 (citations omitted). *See also In re Slaughter*, 141 B.R. 661, 664 n. 4 (Bankr.N.D.Ill.1992) (Ginsberg, J.); *In re Torres*, 2000 WL 1515170, *3 (Bankr.D.Idaho Oct. 10, 2000) (due to a delay of nearly 8 months between the confirmation hearing and submission of a proposed confirmation order, good cause existed for the court to order that funds paid into the plan and held by the Trustee "should not revest in Debtors *as would normally occur* pursuant to Section 349(b)(3)") (emphasis added).

*Nash* was written, however, before § 1326(a)(2) was added to the Code. Some subsequent cases found *Nash* "superseded by 11 U.S.C. § 1326(a)(2)." *In re Hileman*, 451 B.R. 522, 526 n. 3 (Bankr. C.D.Cal.2011) (citing *Nash* for a different proposition). *See also In re Hill*, 440 B.R.

176, 184 n. 7 (Bankr.S.D.Cal.2010) (citing *Nash* for a different proposition).

As one later court explained:

Although the Ninth Circuit did not address the current § 1326(a)(2) (which was inapplicable in *Nash* ), the court did address the effect of what was then § 1326(b) (now § 1326(c)) and which provides:

> Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

The court of appeals correctly concluded that this simply designated the trustee as the disbursing agent in default of any other provision providing otherwise, and did not address whether the trustee was required to disburse funds in accordance with the plan after dismissal. *Nash*, 765 F.2d at 1413 n. 1. Here, in contrast, § 1326(a)(2) does apply, and does specifically direct disbursement of the funds received after confirmation of a plan in accordance with the confirmed plan, and makes no exception for a dismissed case.

*In re Parrish*, 275 B.R. 424, 428 n. 4 (Bankr.D.Dist.Col.2002).

*Parrish* went on to state that whether or not funds held by a trustee are property of the estate or are titled in the debtor "is irrelevant to deciding whether the debtor or creditors are entitled to receive the funds under the confirmed plan: § 1326(a)(2) mandates payment in accordance with the terms of the confirmed plan, and that mandate is not undone by

---

13 to Chapter 7. This presents a different set of issues and, for the most part, these cases are not relevant to the discussion herein.

Although conversion and dismissal of a Chapter 13 case have some substantive and procedural similarities, this court believes that there are also significant differences between conversion and dismissal such that

cases resolving the respective rights of various parties to funds held by the Chapter 13 trustee at the time of conversion offer little guidance for the issue presently before this court.

*In re Slaughter*, 141 B.R. 661, 662–63 (Bankr. N.D.Ill.1992) (footnote omitted) (Ginsberg, J.).

§ 1327(b) [vesting all of the property of the estate in the debtor at confirmation] either before or after dismissal." *Id.* at 428. *See also In re Darden,* 474 B.R. 1 (Bankr.D.Mass.2012).

*Parrish* also criticizes *Slaughter* for its failure to mention § 1326(a)(2), but that accusation is falsely laid. *Slaughter* not only mentions § 1326(a)(2), it provides the very reason that § 1326(a)(2) is inapplicable in this case:

> Similarly, because the debtors' plan was confirmed, cases arising under § 1326(a)(2) of the Bankruptcy Code dealing with how the trustee should dispose of money paid in by a debtor to fund a plan that is never confirmed are of no help here.

*Slaughter,* 141 B.R. at 663 n. 1.

Several post-*Parrish* decisions have found *Nash* to be valid, agreeing with *Slaughter* that § 1326(a)(2) applies only to *pre-confirmation* payments. *See In re Tran,* 309 B.R. 330, 335 (9th Cir. BAP 2004) ("We think *Nash* still applies. In our view, § 1326(a)(2) was not intended to address the disposition of funds received by a chapter 13 trustee after confirmation"), *aff'd* 177 Fed.Appx. 754 (9th Cir. 2006); *In re Majkowski,* 2011 WL 2652386, *1 (Bankr.N.D.W.Va. July 6, 2011) ("the better reasoned view is that § 1326(a)(2), by its very terms, is inapplicable to funds paid to the trustee post-confirmation but not disbursed pursuant to the confirmed plan at the time of dismissal"); *In re Parker,* 400 B.R. 55, 62 (Bankr. E.D.Pa.2009) ("the general provision of section 349(b)(3) may govern postconfirmation payments held by a chapter 13 trustee upon dismissal. It does not, however, undermine the rights of creditors to funds paid pre-confirmation as specified in section 1326(a)") (footnote omitted); *In re Boggs,* 137 B.R. 408, 410 (Bankr. W.D.Wash.1992) ("By its terms,

§ 1326(a)(2) does not pertain to funds received by a trustee *after* confirmation of a Chapter 13 plan.") (emphasis in original). *See also In re Michael,* 436 B.R. 323, 327 (Bankr.M.D.Pa.2010) (reviewing section 1326(a)(2) in the context of conversion but agreeing with *Boggs* that this section does not address "the disposition of plan payments made post-confirmation"), *aff'd,* 446 B.R. 665, 668 (M.D.Pa.2011) ("1326(a)(2) does not vest creditors with a right to post-confirmation funds at the time they are received by the chapter 13 trustee. To hold otherwise would be to stretch the language of the statute beyond it [sic] intended scope"), *aff'd,* 699 F.3d 305 (3rd Cir.2012).

 This court agrees with *Slaughter*'s and *Tran*'s interpretation of § 1326(a)(2). This subsection applies only to plan payments made *prior* to confirmation. The first sentence instructs trustees to retain pre-confirmation plan payments until the court confirms a plan or denies confirmation. The next sentence tells the trustee, 'now distribute those pre-confirmation payments in accordance with the plan as soon as you can.' The third sentence indicates what a trustee should do with those pre-confirmation payments if a plan is not confirmed.

 After the trustee distributes those pre-confirmation payments, he or she can now act according to the confirmed plan. For this portion of the bankruptcy case, section 1326(c) instructs the trustee to "make payments to creditors under the plan." As *Nash* clarified, this section (previously 1326(b)) "was intended to address only the question of who should act as disbursing agent (debtor, trustee, or someone else) of Chapter 13 plan funds. Section 1326(b) does not address whether the Trustee was required to continue making distributions after the first Chapter 13

case was dismissed." *Nash*, 765 F.2d at 1413 n. 1.

Indeed, none of the provisions of § 1326 provide any direction to the trustee when a case is dismissed post-confirmation. "[Section] 1326(a)(2) applies only to payments paid to the trustee after the commencement of the case but prior to confirmation or denial of confirmation, and is inapplicable to funds paid to the trustee post-confirmation; such funds revert to the debtor [upon dismissal] pursuant to § 349(b)(3)." *Majkowski*, 2011 WL 2652386, *2. It is section 349(b)(3) to which we must turn for direction.

■ Upon dismissal, section 349(b)(3) revests property of the estate with the entity in which the property was vested immediately before the petition was filed. Therefore, the funds held by the Chapter 13 trustee must be returned to the debtors who made the payments under their plan.

This effect of dismissal does not differ depending on whether the funds paid by the debtors were property of the estate prepetition or postpetition, as explained by Judge Ginsberg:

> While the Bankruptcy Code in § 349(b)(3) only deals with property that was property of the estate prepetition, the same logic should apply to postpetition property of the estate, such as a Chapter 13 debtor's wages. It would be anomalous to give prepetition property of the estate to the debtor under § 349(b)(3) and postpetition property of the estate to creditors. For example, suppose that on Day 1, the debtor filed a Chapter 13 petition. On Day 2 the debtor inherits property. That postpetition inheritance would undoubtedly become property of the Chapter 13 estate. Suppose further that on Day 3 the debtor's plan calling for the inherited property and a portion of the debtor's future wages to be paid to creditors is con-

firmed. On Day 4, before any of the property is distributed to creditors under the plan, the debtor exercises his right to dismiss the Chapter 13 case.

> Clearly the debtor would be entitled to the inherited property upon dismissal of the Chapter 13 case as opposed to the debtor's creditors. This result follows because the Bankruptcy Code, in § 349, seeks to undo the bankruptcy upon dismissal and make it seem, insofar as possible, as if there had never been a Chapter 13 case. If the creditors were vested with the property inherited by the debtor after the filing of the Chapter 13 petition, the creditors would receive a windfall because they would get something they were not entitled to under state law without pursuit of further state law proceedings. The result of vesting the inherited property in the debtor serves to put the parties exactly in the position they would have been in had the debtor never filed Chapter 13. If there had been no Chapter 13 case, the inherited property would have vested in the debtor subject to whatever rights the debtor's creditors had to reach the inherited property under applicable nonbankruptcy law and procedure to satisfy their claims against the debtor. The same logic dictates that other funds held by the trustee go to the debtors rather than their creditors upon the dismissal of their Chapter 13 case. If the debtors had never filed Chapter 13, they would be entitled to possession of their wages in full, subject to whatever rights their creditors have to reach part of those wages in satisfaction of their claims under applicable nonbankruptcy law and procedure. Thus, giving the withheld wages to the debtors on dismissal more nearly produces the situation that would have existed had the debtors never filed Chap-

ter 13 than any other approach. There is certainly no indication that the authors of § 349 intended any other result. This court holds that pursuant to § 349(b) of the Bankruptcy Code and *Nash, supra,* the debtor is entitled to receive the $2,313 from the trustee.
*Slaughter,* 141 B.R. at 663–664 (citations and footnotes omitted).

Another commentator agrees:

As discussed above in the context of conversion from Chapter 13 to Chapter 7, after dismissal of a Chapter 13 case, there are often funds held by the Chapter 13 trustee or in transit to the trustee, which were deducted from the debtor's income and were intended for distribution under the plan. In the dismissal context, it has been held that a voluntary dismissal vacates the confirmed Chapter 13 plan and immediately relieves the trustee of authority or responsibility to make payments under the plan. ***Funds that are in the hands of the trustee—whether received before or after dismissal of the Chapter 13 case—belong to the debtor and should not be distributed to creditors.*** If the trustee distributes funds to creditors after dismissal of the Chapter 13 case, it has been held that the trustee may be surcharged for return of the funds.

7 Norton Bankr.L. & Prac. § 148.6 (3rd ed. Jan. 2013) (footnotes omitted) (emphasis added).

In conclusion, post-confirmation plan payments made to the trustee must be returned to the debtor upon dismissal.

The Trustee, however, raises a policy issue. She argues that since Judge Eugene Wedoff, a colleague on the U.S. Bankruptcy Court for the Northern District of Illinois, wrote an article with a different conclusion, if this court finds for the Plaintiffs it will create an intra-court conflict. How is she to administer cases before judges who take opposing positions? Plaintiffs respond—and the court agrees—that the proper remedy for such a conflict is an appeal.

Similarly, Plaintiffs' argument that the Trustee formerly had a policy of refunding money in dismissed cases is a red herring. The law is the law, regardless of how the Trustee administered her cases in the past.

For all of the reasons stated above, the court grants the Plaintiffs' motion for judgment on the pleadings. Judgment on the complaint will be entered accordingly.